[No. 8019.]

DENVER & RIO GRANDE RAILROAD COMPANY V. MILLS.

1. JUDGMENT—*Construction of Record.* A railway company applied by petition to condemn certain lands, and an order was made authorizing it to take immediate possession, upon deposit in the court of a sum of money mentioned, ''to be held subject to its order, and to abide said proceeding.'' On the 14th of August following the petitioner was allowed to dismiss its petition, and its application for leave to withdraw the deposit was ''reserved for further consideration.'' On the 9th of January following, a second

order was entered, allowing the discontinuance of the petition, but directing payment of the deposit to the respondent land owner. *Held* that the order of August 14th left the right of the parties as to the deposit undetermined, and that the order of January 9th was intended as a final disposition of the whole matter. (202-204.)

2. EMINENT DOMAIN—*Right of Petitioner to Discontinue.* The settled rule is that, in the absence of a statutory provision, the petitioner may discontinue the proceeding at any time before the right of the property owner to compensation has become complete; but to so abandon the proceeding does not relieve the petitioner from such costs and damages as the property owner may be lawfully entitled to recover. (205.)

Doubted whether the court has power to impose a condition to the discontinuance of the proceeding. (204, 205.)

3. DEPOSIT—*Disposition Of.* An order for the payment of the petitioner's deposit of $500 to the land owner, upon his mere statement that he has been compelled to employ counsel, and "to have his representative come to Trinidad, all at great expense," and that the damages to which he has been put are "largely in excess" of the deposit, not showing what he has paid his attorneys, or from whence the agent came, and without any testimony heard, was *held* without the authority of law, reason or justice. (206.)

4. —— *Purpose of the Deposit.* Under Rev. Stat. secs. 2420, 2456 the sole purpose of the deposit required is to make secure the compensation awarded for the land taken. The court has no authority to require a deposit to be applied upon costs. (207.)

The deposit remains the property of the petitioner, to be applied only to the satisfaction of the damages, occasioned by the taking of the land. (208.)

5. —— *Attorney's Fees.* On the discontinuance of a petition instituted in good faith the land owner is not entitled to an award for his attorney's bill. (209.)

6. WRONGFUL MOTIVE OF A LAWFUL ACT—*Effect.* The motive of an act furnishes no cause of action unless attended by some legal wrong. (212.)

*Error to Huerfano District Court.* HON. HENRY HUNTER, Judge.

Mr. E. N. CLARK and Mr. R. G. LUCAS, for plaintiff in error.

Mr. JAMES M. MCKEOUGH and Messrs. BARTELS & SILVERSTEIN, for defendant in error.

SCOTT, J., delivered the opinion of the court.

On the 11th day of July, 1912, the plaintiff in error

filed its petition in condemnation of a right of way for the construction and operation of a branch line across certain lands of which the defendant in error claimed to be the owner. This petition in all respects conformed to the statutes in such a proceeding, except that it did not declare that the defendant in error was the owner of the premises. The petition on the contrary set forth that both plaintiff and defendant claimed title to the premises, and that theretofore and on the 12th day of June, 1912, the defendant in error filed his bill of complaint in equity in the District Court of the United States for the District of Colorado, claiming that he was the owner and in peaceable possession of the premises, and praying an injunction against the alleged trespass of the plaintiff. The petition of the plaintiff in this case further alleged:

"That upon the return of said temporary restraining order and in order to show cause in said District Court of the United States on the 21st day of June, 1912, your petitioner filed its return hereto, wherein and whereby your petitioner denied the alleged ownership, title and possession of the defendant herein of, in and to the above described premises, and denied any trespass, actual or threatened, on any premises of the defendant herein, and claimed that the title to the 200-foot strip on which it was proposed to construct said alleged spur track was originally vested, by an act of Congress of the United States, in the Denver and Rio Grande Railway Company, and that the said strip had been used by said The Denver and Rio Grande Railway Company for many years, and that your petitioner was the successor in interest to, and was vested with full title to, and to the possession and right of possession of, all and singular the property rights and franchises of every kind and character whatsoever which had theretofore in any manner vested in said The Denver and Rio Grande Railway Company, and your petitioner claimed that the ownership,

title and possession of said 200-foot strip upon which it was proposed to construct said track was in your petitioner, under and by virtue of said act of Congress, and subsequent conveyances and proceedings with reference to said The Denver and Rio Grande Railway Company; and defendant also alleged that said proposed track to be constructed by your petitioner on said 200-foot strip was for a public use.

"That thereafter, and on the 26th day of June, 1912, the said District Court of the United States made and issued its order holding that your petitioner and its predecessors in interest had abandoned the title and possession to said 200-foot strip above mentioned, and that the defendant herein was in possession thereof, and that the defendant herein had acquired title thereto by seven years' actual possession under color of title, and that by registration under the 'Torrens Act,' of the State of Colorado an indefeasible title to said strip was vested in the defendant herein, and that the defendant herein, on filing a bond, was entitled to an injunction *pendente lite*, restraining you petitioner from entering upon or using said 200-foot strip, thereby rendering the institution of these present condemnation proceedings by your petitioner necessary."

On the day of filing the petition for condemnation, the court entered an order for immediate possession, and providing that before the order should go into effect, "the petitioner shall deposit with the court, to be held subject to its order, and to abide said condemnation proceedings in accordance with the statute in such case made and provided, the sum of $500.00." This sum was at once deposited in accordance with the order of the court.

The defendant thereafter filed his motion to vacate the order for immediate possession, upon the grounds stated therein, chiefly dealing with the disputed title to the premises, and the proceedings in the United States District Court in relation thereto.

The strip of land proposed to be condemned in this proceeding was 50 feet wide, being 25 feet wide on each side of the center line of the original narrow gauge track of the Denver and Rio Grande Railway Company.

The court entered an order upon the hearing of the motion to vacate, in substance to the effect, that if the above named petitioner amends its petition heretofore filed herein within fifteen days from the date of this order, so as to unequivocally allege the ownership of the strip of right of way sought to be condemned herein, in the above named defendant, then, and in that event, said order for immediate possession heretofore made herein shall stand, otherwise the same shall be vacated.

Thereafter and on the 31st day of July, 1912, the plaintiff in error filed its motion for a dismissal of the condemnation proceeding, without prejudice to the rights of the petitioner to proceed in such other manner, as it may see fit in accordance with law. Upon the hearing of this motion the court entered the following order:

"It is therefore ordered, adjudged and decreed that that part of petitioner's motion asking to dismiss and discontinue said condemnation proceeding be and the same is hereby granted, and that said condemnation proceeding is hereby dismissed and discontinued at the cost of petitioner. It is further ordered, adjudged and decreed that that part of petitioner's motion asking that said deposit of $500 be refunded and the same is hereby reserved for further consideration."

Later, and on the 9th day of January, 1913, the court made the following findings and entry of judgment:

"The court, after being advised by argument of counsel on behalf of petitioner as well as respondent, and further consideration of said matter, finds:

First. That the petitioner should be granted right to dismiss said proceeding. That petitioner should be denied

to a right of refund of its deposit of five hundred dollars made herein.

It is therefore ordered, adjudged and decreed that petitioner be and is hereby granted the right to dismiss the condemnation proceedings herein.

And it is further ordered, adjudged and decreed that the application of petitioner to a refund of the deposit of $500 made herein be and the same is hereby denied, and that the clerk pay said sum of $500 to Ogden Mills, the respondent herein."

The only assignment of error is as to that part of the order and judgment, directing the clerk to pay to the defendant in error the $500 so deposited by the plaintiff at the institution of the proceeding.

The record discloses that the plaintiff did not at any time enter into possession, and did not disturb the premises nor the possession of the defendant thereto. There was no finding or award as to damages, and the defendant does not claim damage to the land, but does claim an allowance for his costs and expenses, including counsel fees in defending the proceeding. The court costs had been taxed and paid. There was no testimony taken in the matter, but the several motions were supported and opposed by affidavits. The court made no finding as to the amount of attorneys' fees incurred by the defendant, nor as to any other matter of expense, but simply ordered the full sum so deposited in the condemnation proceeding to be paid to the respondent.

The defendant in error raises the question that the part of the order to which the plaintiff objects is not reviewable; that the order of August 14th, 1912, dismissing the proceeding, was final, and that the order of January 9th, 1913, related only to costs, and for such reason is not appealable. But it is plain that the $500 judgment was not for costs, as that term is understood within the rule of this court, denying the right to a writ of error to review an order for the

payment of costs alone. The motion was for a refund of the deposit.

The deposit and its disposition was a part of the proceeding, and the court in its order of August 14th, expressly stated that it was not satisfied as to the right of the plaintiff in error to have the same refunded, and for such reason reserved the question for further consideration. This left the rights of the parties as to the specific sum of money still undetermined, and the cause was continued pending a further consideration of the motion. There was still something further for the court to do, in order to determine the rights of the parties involved. *County Court v. Eagle Rock Co.*, 50 Colo. 365, 115 Pac. 706.

It is apparent that the court intended his decree of January 9th, to be the final judgment as to the entire matter, for this contains a dismissal of the proceeding together with the award of the deposit. The disposition of the deposit in a condemnation proceeding is essential to a final disposition of the cause. *D. & N. O. R. R. Co. v. Lamborn*, 8 Colo. 380, 8 Pac. 582.

It is further contended by the defendant in error, that the order of the court dismissing the proceeding was conditional, and authorities are cited applicable to conditional dismissals. But the dismissal of the proceeding in this case was not upon the condition that the deposit should be paid to the defendant, nor upon any other condition. Nor was the order for the payment of the money to the defendant conditional upon the dismissal of the proceeding. It is plain that the court definitely reached and announced his conclusion as to defendant's right of dismissal before he had determined the question of disposition of the deposit.

These questions were clearly determined by the court, each independent of the other, and wholly without any relation of one subject matter to the other.

It is at least open to grave question whether the court

had the power in any event to impose a condition to the dismissal of a condemnation proceeding.

The settled rule in this respect is that in the absence of a statutory provision showing a legislative intent to the contrary, the condemning party may discontinue the condemnation proceedings at any time before the right of the property owner to compensation or damages has become complete. 15 Cyc. 935.

Under our own statutes it has been held, that the privilege of abandonment may be exercised at any time prior to the payment or deposit in the manner provided by law of the sum awarded *D. & N. O. R. R. Co. v. Lamborn, supra.* But the privilege to so abandon the proceeding does not relieve the condemning party from the payment of such costs and damages as may be lawfully recovered.

We come now to the paramount question in the case. Did the court err in denying the motion of the plaintiff for a return to it of the deposit, and in awarding such deposit to the defendant, as payment for the "cost, damages and expense incurred by him by virtue of the institution of the proceedings."

The only claim of the defendant to the deposit was as follows:

"That he was compelled, by the institution of these proceedings, to employ counsel to come from Denver to Trinidad, and to employ counsel at Trinidad, Colorado, and to have his representative, J. A. Ownbey, come to Trinidad, all at a great expense, and that the damage and expense and cost to which this respondent has been put, legitimately and reasonably, by virtue of the institution of these proceedings, is largely in excess of the sum of five hundred dollars so deposited by the said petitioner."

There is no statement as to the amount of attorneys' fees paid or incurred, nor as to the expense of the agent in coming to Trinidad. It is not even stated from whence such

agent came.   There was no testimony upon this subject.  The
court simply ordered the payment of the deposit of $500 to
be made to the defendant.  This not only without proof, but
without statement of the amount separately or otherwise
expended or incurred, either as to traveling expenses, or for
attorneys' fees, other than that the total of these was in
excess of the $500 deposit.

There is neither authority of law, nor reason or justice,
for the rendition of such a judgment upon this showing,
even though such expenses were properly allowable in the
case.   The showing does not even permit of respectable
speculation as to the amount, either in the matter of attor-
neys' fees or traveling expenses.   The order was therefore
without basis and arbitrary in the extreme.

Our eminent domain statute, sec. 2420, provides that
the court shall appoint a commission "to ascertain and deter-
mine the necessity for taking such lands, franchises or other
property, and to appraise and determine damages, and com-
pensation to be allowed to the owner and person interested
in the real estate or property proposed to be taken or dam-
aged in such county, for the purposes alleged in the petition."
And further: "That the judge or the court before or where-
in any such proceedings are had shall determine the amount
such petitioner shall be required to pay or deposit pending
any such ascertainment."

Section 2456 provides:

"Immediately upon the filing of the verified petition
provided for by section 1716 of Mills' Annotated Statutes,
accompanied by the deposit with the clerk of the court for
the use of the respondent of that amount of money which
the court or judge thereof, from the affidavits of two disin-
terested persons selected by the petitioner and from such
other evidence as the court or judge thereof may require,
shall determine to be compensation proper to be made to any
person or corporation holding or owning any right, title,

interest, claim, lien or estate in, to or upon any lands, real estate, mining claim or any interest therein, the court or judge thereof shall, by rule in that behalf made, authorize the petitioner if not in possession to take possession of such right of way, and if already in possession to maintain and keep such possession and in all cases to use and enjoy such right of way during the pendency and until the final conclusion of such proceedings, and shall, by rule in that behalf made, stay all actions and proceedings against such petitioner on account thereof." -

The statute is silent upon the question of the payment of attorneys' fees, or of any such expense as is claimed in this case by the defendant in error.

It is plain that the deposit under the statute is required for the sole purpose of making secure the award of compensation to be made for the taking of the land. The court has no authority to require the petitioner in a condemnation proceeding to deposit a sum to be applied on costs accrued or to accrue. *Teller v. Sievers et al.,* 20 Colo. App. 109, 77 Pac. 261.

The nature and character of the preliminary deposit in a condemnation proceeding was considered by this court in the case of *Clelland v. McCumber,* 15 Colo. 355, 25 Pac. 700, where it was said:

"It seems clear that the petitioner making such deposit has an immediate and direct interest therein at all times until the final adjudication, and until the same is finally applied to its ultimate purpose. Such deposit is essential to petitioner's right of entry and possession. If by any means it is withdrawn before the final determination of the controversy, petitioner's right of possession is suspended. The preliminary deposit is not payment, nor part payment, until it is actually so applied. It is in the nature of a continuing tender, and must at all times be kept good by petitioner, though it lacks some of the incidents of tender, in that the

owner is not bound to accept it or incur the risk of being mulcted in costs, if it proves sufficient.  In receiving the preliminary deposit, the court, or its proper officer, acts as the depositary of the petitioner, who thereby, in pursuance of the statute, acquires the privilege of immediate entry and possession of the premises sought to be taken.  The owner is an involuntary party to the proceeding.  If by any means the deposit fails, petitioner's statutory privilege is at once imperiled, and the possession may be actually terminated unless the deposit be replaced.  The deposit, therefore, must be considered as held by the public official at the risk of the · petitioner, until the same is actually applied to its ultimate purpose, or is otherwise legally disposed of."

Then under the law as heretofore determined by this court, the deposit was the property of the railroad company, in custody of the law, and to be used only for the payment of damage by reason of the taking, and not for costs of the suit.

Whether by its order alone the court in this proceeding could levy on the deposit, in payment of lawful costs incurred by the proceeding, or whether such costs must be recovered in an independent action, as held in some jurisdictions, we do not find it necessary to determine.

A proceeding in condemnation is a special proceeding, and it has been generally held that to authorize an allowance of costs in special proceedings, some special statutory authorization is necessary.  That these proceedings are not within the purview of statutes authorizing the allowance of costs in actions generally.  11 Cyc. 53.

In some jurisdictions statutes have been enacted authorizing allowance of costs in special proceedings, or in a designated class of such proceedings, and in some states the matter of the allowance of costs in such cases has by statute been placed within the discretion of the court.  There is no statute of either character in this state.

But notwithstanding such general rule this court has

held that court costs may be allowed. *McLain v. People*, 9 Colo. 190, 11 Pac. 85; *Dolores Canal Co. v. Hartman*, 17 Colo. 138, 29 Pac. 378. But the court has never gone so far as to hold that attorneys' fees, and such other expenses as are involved here, may be recovered in a condemnation proceeding. Indeed, in the only case where the question has been raised it was held that such expense could not be recovered under our statute. In the case of *Schneider v. Schneider*, 36 Colo. 518, 86 Pac. 347, which was a condemnation proceeding for the right of way for an irrigation ditch, it was said:

"Appellant complains bitterly because the trial court did not compel plaintiff to pay defendant's attorney fees, amounting to $250.00. The statute makes no provision for the payment of such attorney fees, and the trial court would not have had the right to make such an order."

This view is supported by the overwhelming weight of authority. In *Stevens v. Borough of Danbury*, 53 Conn. 9, 22 Atl. 271, it was said:

"The plaintiffs claimed also to recover for counsel fees and other expenses incurred in the hearing before the appraisers. These very clearly they had no right to recover in any circumstances. The borough was acting within the law in applying for an assessment of the damages, and the law under which the proceedings were had made no provision for costs on either side, while the abandonment of the taking of the property by the borough could not create an obligation to pay these costs where no legal obligation existed before. There was no negligence on the part of the borough; no misrepresentation; no action that was not in every respect according to law. There was nothing upon which to found a claim for damages for a consequential injury in any form."

The Supreme Court of Utah in *McCready v. Railway Co.*, 30 Utah 1, 83 Pac. 331, wherein it was said that the

decisive question presented was, whether a party who in good faith commences an action under the eminent domain act, is liable upon dismissal of the suit by such party, to the owner of the land for expenses he was put to in employing counsel, hiring witnesses and his own loss of time and expenditures made in defense of the suit; that is, such expenditures made in defense of the suit; that is, such expenditures as a party may be put to in preparing his defense, said:

"Counsel for appellant do not question the general proposition that in civil cases generally the defendant is not entitled, upon a dismissal of a suit brought in good faith, to recover for expenses made by him in preparing his defense which are not taxable as costs in the case; but they contend that in eminent domain proceedings to condemn land, because the plaintiff is given the right to acquire the title and possession of land with out the owner's consent, a different rule should govern, and, in addition to expenditures which the landowner is permitted to tax as cost upon a dismissal of the action, he should be permitted to recover for whatever other damages or losses he may have sustained by the institution of the suit. We know of no reason—and certainly none has been suggested or pointed out—why the exception contended for should be made in this class of cases. For aught that appears in the record, the defendant acted in perfect good faith in bringing its suit to condemn; and so long as it acted in good faith, it cannot be held to be guilty of a legal wrong, as suits of this character are expressly authorized by the laws of this state, and if the defendant in that case necessarily incurred expenses in preparing his defense that were not taxable as costs in the action, it is a case of *damnum absquie injuria,* for which no recovery can be had."

And in *Andrus v. Bay Creek Ry. Co.,* 60 N. J. L. 10, 36 Atl. 826, the court gave as reason for the rule, that "the

difficulty with the case laid is that it exhibits a loss to the plaintiff produced by entirely legal conduct on the part of the defendant. It is clear case of *damnum absque injuria*. There was no legal wrong done to the plaintiff by the institution of this procedure nor of its discontinuance. In all this there was no abuse of legal process. That an action will not lie in such a condition of facts has always been the doctrine of the courts of this state."

In *Lincoln Northern Ry. Co. v. Wiswell* (Cal.), 97 Pac. 536, it was said: "Appellant makes the point that the court should have required payment of attorneys' fees as part of the costs. Section 1255 provides that 'costs may be allowed or not, and, if allowed, may be apportioned between the parties on the same or adverse sides, in the discretion of the court.' These costs are such as ordinarily attend the trial of causes."

See, also, *Winkelman v. Chicago,* 213 Ill. 360, 72 N. E. 1066; *Coburn v. Townsend,* 103 Cal. 233, 37 Pac. 202; *Railway v. Mayne,* 83 Cal. 566, 23 Pac. 522; *In re Moyer Street,* 6 Phila. (Pa.) 81; *Railway v. Wiswell,* 8 Cal. App. 578, 97 Pac. 536; *Railway v. Goodwin,* 110 N. C. 175, 14 S. E. 687; *Jones v. School Dist.,* 140 Iowa 179, 118 N. W. 265; *Hester v. City,* 84 Mich. 450, 47 N. W. 1097; *Bergman v. Railway,* 21 Minn. 533.

There are cases holding that attorneys' fees and other expenses in condemnation may be allowed, but with only an occasional exception, this is based upon statutes authorizing such allowance. Thus in the case of *Woodcock v. Wabash Ry. Co. et al.,* 135 Ia. 559, 113 N. W. 347, referring to a statute authorizing attorneys' fees in the lower court, it was said: "Without this section plaintiffs would not be entitled to have attorneys' fees taxed to defendant for services either here or in the district court, as such fees are not, in the absence of statute, regarded as taxable costs."

"It is urged by counsel that this proceeding was not

brought in good faith by the plaintiff in error, and that the petition discloses an attempt to withhold from the court the true status of the title to the land in question. With this we cannot agree. The record discloses a good faith purpose of the railroad to construct its line across the lands in question to supply a public necessity. The petition on its face sufficiently disclosed the disputed title. At least the defendant in error by its motion attacked it, and the court sustained the objection. The order of the court commanding an allegation of unquestioned title in the defendant, went to the insufficiency of the pleading, and not to bad faith upon the part of the petitioner. Bad faith cannot be imputed to an action because of the insufficiency of the pleading alone.

The railroad company had a legal right to institute the proceeding. The exercise of a legal right by one cannot be a legal wrong to another. Cooley on Torts, p. 638. The motive with which one does an act furnishes no cause' of action, unless there be some legal wrong. *Kelly v. C. M. & St. P. Ry.*, 93 Ia. 437, 61 N. W. 957. A man's motive will not make wrongful an act which is not wrongful in itself. *Heald v. Carey*, 11 C. B. 977.

The court erred in refusing to return to the plaintiff in error the amount of its deposit, and also in ordering the payment of such deposit to the defendant in error.

The judgment is reversed with direction to enter an order for the payment of the sum deposited to the plaintiff in error.

GABBERT, C. J., and GARRIGUES, J., concur.