No. 9749.

POST PRINTING & PUBLISHING COMPANY ET AL. *v.* CITY AND COUNTY OF DENVER.

1. EMINENT DOMAIN—*Discontinuance.*   A city prosecuting condemnation proceedings may discontinue them at any time before payment of what is awarded as compensation for the lands taken.   The city may at once institute a new proceeding.

And the provision in the ordinance authorizing such proceeding that it shall be dismissed if the benefits assessed against the city exceed a specified sum is not an admission that no necessity for the improvement exists.

2. *Uncertainty as to Payment—Constitutional Law.*   Proceeding under c. 129 of the acts of 1911 demanding condemnation of private lands for a local improvement.

Sec. 7 of the act provides that a proportion of the condemnation money shall be assessed against properties specially benefited by the improvement, which when collected shall be paid into the city treasury, to be used for the payment of the awards and damages, and that the proper officers of the city shall issue warrants of the municipality to the parties entitled thereto. It was contended by the property owners that all sources from which compensation for the premises taken were limited, so that in effect no provision was made for the payment of compensation.

A like contention was made to another provision of the statute (sec. 19) looking to the payment of the compensation. *Held* the only ground for these contentions being that the special assess-

ment against properties benefited would not be paid, which was mere conjecture, was not a sufficient ground to deny the constitutionality of the statute.

*Held* further that inasmuch as the judgment of condemnation expressly provided that payment to the property owners should be "in cash or by warrants upon a fund in which money is available for the immediate payment thereof" the property owners were not entitled to question the constitutionality of the law.

3. *Assessment of Benefits—Railway Property,* benefited by special improvements may be assessed the same as other lands.

4. MUNICIPAL CORPORATIONS—*Amending Ordinance.* The amendment of one section of an ordinance under a charter provision similar to that contained in sec. 24 of art. V of the Constitution, does not require that the residue of the ordinance shall be reprinted.

5. CONSTITUTIONAL LAW—*Statute—Unconstitutionality Of,* must appear beyond a reasonable doubt.

*Error to Denver District Court, Hon. Charles C. Butler, Judge.*

Mr. C. C. DORSEY, Mr. THOMAS R. WOODROW, Messrs. BENEDICT & PHELPS, for plaintiffs in error.

Mr. JAMES A. MARSH, Mr. ERNEST MORRIS and Mr. JACOB J. LIEBERMAN, for defendant in error.

Mr. Justice Teller delivered the opinion of the court.

THIS cause is before us on error to a judgment of the District Court confirming a report of assessments, and an award of damages in a condemnation proceeding under chapter 129, Laws of 1911, to extend the street known as Broadway, in the City of Denver, from Welton Street to Blake Street. The proceeding was based upon an ordinance of said city, known as Ordinance No. 59, of the series of 909, as amended by Ordinance No. 57, of the series of 1916. It is contended that the amendment of Ordinance No. 59 is ineffectual because of an alleged invalidity of the original ordinance; and because, further, the amendment was not adopted according to the requirements of the City

Charter. Section 4 of Ordinance No. 59, in terms limited the amount for which the city could be made liable in the proceeding, and this is said to render the ordinance void. The proviso containing this limitation reads as follows: "Provided, however, that if by the final action of the court in said proceeding, it shall appear that a general benefit has been assessed against the City and County of Denver in a sum exceeding $$115,000.00, then in that event said proceeding shall be dismissed, etc." We cannot agree with counsel that this proviso amounts to an admission that the necessity for the improvement did not exist. The city might find and declare the existence of such necessity, without being willing to pay an unlimited sum toward the improvement. The discontinuance of such a proceeding was within the power of the city at any time prior to the payment or deposit of the sums awarded as compensation for the property proposed to be taken. *D. & R. G. Ry. Co. v. Mills,* 59 Colo. 198, 147 Pac. 681, Ann. Cas. 1916 E. 985; *D. & N. O. R. R. Co. v. Lamborn,* 8 Colo. 380, 8 Pac. 582.

In *Garrison v. City of New York,* 21 Wall. 196, 22 L. Ed. 612, the court said: "The proceeding to ascertain the benefits or losses which will acrue to the owner of property when taken for public use, and thus the compensation to be made to him, is in the nature of an inquest on the part of the state, and is necessarily under her control. It is her duty to see that the estimates made are just, not merely to the individual whose property is taken, but to the public which is to pay for it. And she can to that end vacate or authorize the vacation of any inquest taken by her direction, to ascertain particular facts for her guidance, where the proceeding has been irregularly or fraudulently conducted, or in which error has intervened, and order a new inquest, provided such methods of procedure be observed as will secure a fair hearing from the parties interested in the property. * * *

"Until the property is actually taken, and the compensation is made or provided, the power of state over the matter is not ended." There can be no doubt of the right of the city to dismiss its suit, and begin anew.

Counsel further contend that the amendment of section 4 violates section 216 of the Revised Charter of 1916 which, among other things, requires that in amending or revising an ordinance "so much thereof as is revised, amended, extended or conferred, shall be re-enacted at length." Counsel's view is that this requires the reenactment of the entire ordinance. This provision is the same as that in the constitution relating to the amendment of the statutes. Its purpose has been many times stated by the courts. It is intended to prevent the confusion which results from amending ordinances by reference to the title, or by interpolating words without restating the part amended. Section 4 as amended is complete in itself. To require that the rest of the ordinance be reenacted is to require a vain thing. It is not in accord with reason or authority. The case of *People v. Friederich,* 67 Colo. 69, 185 Pac. 657, is not in point, as the statutes there amended were amended by reference only. The same rule should be applied here as applies to statutes, and that it is not necessary to reenact the whole statute is determined in *Edwards v. D. & R. G. R. R. Co.,* 13 Colo. 59, 21 Pac. 1011. The fact that in that case a new section was added, does not affect the rule announced. The ordinance as amended was a valid enactment and was no less so because the city saw fit to dismiss the original proceeding instituted on it before amendment. The city, having as we have seen, the right to abandon the proceeding, as it did, lost no rights by dismissing the suit. It abandoned the proceeding then pending in court, but not the project. It seems, however, wholly immaterial, whether we regard this as a continuance of the original proceeding, or a new one, there being no doubt that the city might proceed in either way.

As to the objection that since the ordinance provided for but one proceeding, the second proceeding is without force, it should be observed that the first proceeding was never carried out. The basis of this court's judgment in *Fifteenth Street Co. v. Denver,* 59 Colo. 189, 147 Pac. 677, was that the improvement for which the commissioners had made

provision, was not the improvement authorized by the city. This is, therefore, the first proceeding in accordance with the ordinance.

The next and most important question argued is that of the constitutionality of the law of 1911, *supra*. It is said to be unconstitutional because it fails to make provision for certain and reasonably prompt compensation for the property taken; and, further, because it provides for payment otherwise than in money, that is in warrants. The first supposed difficulty is found in section 7 of the act which provides for assessments against property found to be specially benefited by the proposed improvement, the balance of the required amount to be assessed against the city. Counsel contend that both sources from which funds are to be received are limited, and hence the statute fails to provide for adequate compensation. The conclusion that the fund thus to be acquired is inadequate, seems to be reached by assuming that the assessments for special benefits will not be paid. We see no other ground for the conclusion. A conclusion thus reached is too uncertain to furnish a basis for holding an act unconstitutional. The rule is that the unconstitutionality must appear beyond a reasonable doubt. Mere conjecture is not sufficient. As to the amount to be paid by the city, no ground is suggested in support of the objection. Nor is the second ground, which refers to the provisions of Section 19 of the act, a better basis for the attack. Here, again, there is an assumption that if warrants are tendered they will not be promptly paid. But we have now no concern with such a case. The judgment under review requires the city, as a condition of obtaining title and possession, to make payment "in cash or by warrants drawn upon a fund in which moneys are available for the immediate payment thereof." Under this state of the record, plaintiffs in error are not entitled to raise the question of the constitutionality of the law. It is elementary that only those whose rights are affected by the enforcement of the law may question its constitutionality. *Newman v. The People,* 23 Colo. 300, 47 Pac. 278; 12 C. J.

760.  Should a case arise in which warrants are offered, when there are no funds available for their payment, a different question would be presented.  We have, however, considered the question raised because of its importance, and because counsel contend that we did not definitely determine the question in *Wassenich v. City & County of Denver*, 67 Colo. 456, 186 Pac. 533.  The court in that case simply announced that the question had been determined in former adjudications.

Plaintiff in error, The Union Pacific Railroad Company contends, further, that the assessment against it is void because it is laid upon property devoted solely to railroad purposes, and not in terms made liable by the law.  The assessment is made upon a tract of railroad property, which is four hundred feet wide where assessed.  In the latter part of the contention above stated, the Railroad Company appears to reverse the settled rule, i. e., that taxation is the rule, and exemption the exception, by claiming that the assessment is void because the right to assess railroad property is not expressly given by the law.  The language of the act is general, and includes all property usually taxed.  The fact that railroad property is not specifically made liable to assessment, while an earlier act, referring to a specific class of public improvements, made such property liable, is not sufficient to create an exemption.  That the property will be benefited by the improvement is settled by the decree of the court confirming the findings of the commissioners made on a conflict of evidence.  The only question to be determined is the liability of the property to assessment.  In Elliott on Railroads, Section 786, the author states that there is a conflict in the adjudicated cases as to whether or not the right of way of a railroad company is subject to local assessments and adds:  "The latest authorities on the subject, however, recognize what we believe to be the true rule, and that is, that, where the right of way receives a benefit from the improvement for which the assessment is levied, and there is no statute exempting the railroad company from local assessments in clear and

unequivocal terms, it is subject to assessment." Gray in his work on Limitations of Taxing Power and Public Indebtedness, section 1913, after discussing the cases which hold a railroad right of way assessable, says: "On the other side are several respectable authorities. If they be closely examined, however, it will be 'found that the question was one of fact in the particuar cases." In *Heman Construction Company v. Wabash Railroad Company,* 206 Mo. 172, 101 S. W. 67, 12 L. R. A. (N. S.) 112, 121 Am. St. 649, 12 Ann. Cas. 630, the court, after examining a large number of cases, says: "In each of these cases the question was one of fact, that is, absence of benefit to the property against which the assessment was made." Upon full review of the authorities, the court held that the right of way was assessable. In Page & Jones on Taxation by Assessment, Section 594, it is said: "It seems well settled that the legislature may provide for the assessment of property owned by a railroad corporation and used for railroad purposes. On the other hand, it seems clear that such property may be exempted from local assessment if the legislature sees fit to exempt it. If the legislature has provided for assessing property benefited, or property within certain territorial limits, and has provided specifically neither for the exemption nor the inclusion of railroad property, we find a number of different views expressed by the courts as to the propriety of assessing railroad property. The discrepancy is greater in *obiter dicta* than in the actual adjudications. In some cases the view is expressed that railroad property is, in the absence of specific exemption, subject to local assessment in the same way as the property of individuals. In other cases, the same general idea is expressed in a more guarded way, and it is said to be proper to assess railroad property if the property is benefited by the particular kind of improvement for which the assessment is levied, while in the absence of such benefit, it should not be assessed. In cases holding this view it has, however, been said that railroad property is *prima facie* to be looked upon as benefited by local improvement. In other jurisdictions a distinction is

drawn between railroad property, which is used for a right of way, or is otherwise permanently devoted to public use, and such property as is not permanently so devoted. The courts drawing this distinction hold that property which is permanently devoted to public use cannot be assessed for local improvement, while property not so devoted can be assessed."

Having this distinction in mind, it appears that upon the question of the right, in any case, to assess railroad property for benefits, but few of the cases commonly cited against the right are strictly in point. Upon the right itself, we are of the opinion that a majority of the cases are in favor of its existence. We are further of the opinion that the reasoning in favor of such right is more persuasive than that to the contrary. The rule of this court, as has been announced, is, on questions of first impression, to follow the rulings of the supreme court of the United States. In *L. & N. Railroad Co. v. Barber Co.*, 197 U. S. 430, 49 L. Ed. 819, 25 Sup. Ct. 466, the court, in holding a railroad right of way assessable, said: "The plea plainly means that the improvement will not benefit the lot because the lot is occupied for railroad purposes and will continue so to be occupied. Compare *Chicago, Burlington & Quincy R. R. v. Chicago*, 166 U. S. 226, 257, 258, 41 L. Ed. 179, 17 Sup. Ct. 581. That, apart from the specific use to which this land is devoted, land in a good-sized city generally will get a benefit from having the streets about it paved, and that this benefit generally will be more than the cost, are propositions, which, as we already have implied, a legislature is warranted in adopting. But, if so, we are of opinion that the legislature is warranted in going one step further and saying that on the question of benefit or no benefit the land shall be considered simply in its general relations and apart from its particular use. See *Illinois Central R. R. v. Decatur*, 147 U. S. 190, 37 L. Ed. 137, 13 Sup. Ct. 293. On the question of benefits the present use is simply a prognostic, and the plea a prophecy. If an occupant could not escape by professing his desire for solitude and silence, the

legislature may make a similar desire fortified by structures equally ineffective. It may say that it is enough that the land could be turned to purposes for which the paving would increase its value. Indeed, it is apparent that the prophecy in the answer cannot be regarded as absolute, even while the present use of the land continues—for no one can say that changes might not make a station desirable at this point in which case the advantages of a paved street could not be denied." In the recent case of *Mackey, County Treasurer, v. Choctaw O. & G. R. Co.,* reported in the advanced sheet of the Federal Reporter, Vol. 261, p. 342, the Circuit Court of Appeals said: "The general rule, sustained by the weight of authority, is that a railroad right of way, whether owned in fee or held in easement, is real estate, property, or ground which may be subjected to assessment for the cost of local improvements."

In this case we have to go no further than to follow the cases above mentioned in the quotation from Page & Jones, which distinguish between the use of railroad property specifically for a right of way, and property not thus used. It appears in this record that the railroad property in question is devoted in a comparatively small part to right of way purposes. It is capable of uses for freight houses, for team trackage and similar purposes, and when so used it would certainly be largely benefited by the opening of a main thoroughfare to its immediate neighborhood.

We conclude then, according to the great weight of authority, that the property in question was assessable and hence the court committed no error in confirming an assessment on it. For the reasons above stated, the judgment is affirmed.

*Affirmed.*

Decision *en banc.*

Mr. Justice Allen not participating.