Allen, J.
 

 The controlling question involved in this case is whether, when assessments have been made on a lot or parcel of land in a municipal corporation, which-a court on appeal has found exceeded 33 1-3 per cent, of the actual value thereof after the improvement was made, and the prop
 
 *88
 
 erty owners have failed to enter objection to the assessments under the procedure provided for such eases in Section 3848 of the General Code, a court of equity will grant relief by injunction.
 

 The sections of the General Code principally involved in the case are as follows:
 

 ■Section 3819 :
 

 “The council shall limit all assessments to the special benefits conferred upon the property assessed and in no case shall there be levied upon any lot or parcel of land in the corporation any assessment or assessments for any or all purposes, within a period of five years, to exceed thirty-three and one-third per cent, of the' actual value thereof after improvement is made.”
 

 Section 3814 covers the passage of a resolution of necessity by a municipality as a preliminary for the making of a public improvement to be paid for in whole or in part by special assessments, and provides that such resolution shall be published as other ordinances.
 

 Section 3818 provides that a notice of the passage of such resolution shall be served upon the owner of each piece of property to be assessed, in the manner provided by law for the service of summons in civil actions.
 

 Section 11286:
 

 “The service shall be made at any time before the return day, by delivering a copy of the summons, with the indorsements thereon, to the defendant personally, or by leaving a copy at his usual place of residence; or, if the defendant is a partnership sued by its company name, by leaving a copy at its usual place of doing business, or with
 
 *89
 
 any member of sncb partnership. The return must be made at the time mentioned in the writ, and the time and manner of service shall be stated on the writ.”
 

 Section 3847 provides for the appointment by the council of three disinterested freeholders as an equalizing board, to report the estimated assessment upon the land assessed in proportion to the benefits, and also provides that a copy of such assessment shall be filed in the office of the clerk of the corporation for public inspection.
 

 Section 3895:
 

 “Before adopting an assessment made as provided in this chapter, the council shall publish notice for three weeks consecutively, in a newspaper of general circulation in the corporation, that such assessment has been made, and that it is on file in the office of the clerk for the inspection and examination of persons interested therein.”
 

 Section 3848:
 

 “If any person objects to an assessment, he shall file his objections, in writing, with the clerk, within two weeks after the expiration of such notice.”
 

 Section 12075:
 

 “Common pleas and superior courts may enjoin the illegal levy or collection of taxes and assessments, and entertain actions to recover them back when collected, without regard to the amount thereof, but no recovery shall be had unless the action be brought within one year after the taxes or assessments are collected.”
 

 It will be observed that in Section 3848 of the General Code specific reference is made to the
 
 *90
 
 expiration of a notice. The person objecting to an assessment must file his objections in writing with the clerk within two weeks after the “expiration of such notice.” The section immediately preceding, Section 3847, contains no provision whatever with regard to notice. However, we find that Section 3848 was originally Section 586 of the Municipal Code Act, passed May 7, 1869 (66 O. L., 149, 249), carried with slight revision into the Revised Statutes as Section 2279, which has come down to the present day practically without change. The preceding section (Section 2278, Revised Statutes [66 O. L., 248, Section 585]), reads as follows:
 

 “Before adopting the assessment so made, the council shall publish notice for three weeks consecutively, in some newspaper of general circulation in the corporation, that such assessment has been made, and that the same is on file in the office of the clerk for the inspection and examination of persons interested therein.”
 

 This Section 2278 of the Revised Statutes is retained verbatim in Section 3895 of the General Code, which is a part of the present General Cede chapter on Municipal Assessments. It is thus evident that the notice referred to in Section 3848 is the notice provided for in Section 3895, and that the person objecting to an assessment must file his objections in writing with the clerk within two weeks after the council has published, for three weeks consecutively in a newspaper of general circulation in the corporation, notice that such assessment has been made and is on file in the office of the clerk for the inspection and examina
 
 *91
 
 tion of persons interested. There is no donbt in this ease that such notice was published in accordance with the provisions of Section 3895, General Code.
 

 Plaintiff in error insists that the case of
 
 Bashore
 
 v.
 
 Brown, Trustee,
 
 108 Ohio St., 18, 140 N. E., 489, is decisive here. In that case a taxpayer whose lands were specially assessed for the construction of an intercounty highway objected that the assessment was excessive and without special benefit. However, he failed to file his objections in writing, as required in Section 1214, General Code, which provides for a hearing on objections by the county commissioners. The court held in the
 
 Bashore case, supra,
 
 that it was the duty of the property owner to employ the statutory remedy, which might have given him adequate relief, instead of resorting, in the first instance to a court of equity, seeking to enjoin the collection of the tax. The court therefore refused the injunction sought.
 

 . Defendants in error, on the other hand, point out that in the
 
 Bashore case
 
 it was conceded that the commissioners had not exceeded any statutory limitation, and claim that hence the
 
 Bashore case
 
 does not apply.
 

 However, in the instant case, defendants in error urge that no benefit whatever has been derived from this improvement. Upon that feature of the case
 
 Bashore
 
 v.
 
 Brown, supra,
 
 does squarely apply, for the plaintiff in the
 
 Bashore case
 
 alleged in his petition that no special benefit had been conferred upon his property, and that hence the as
 
 *92
 
 sessment was a taking of Ms private property without compensation.
 

 With regard to the objection of defendants in error that their property is not specially benefited, the
 
 Bashore case
 
 is decisive of the question in favor of the plaintiff in error. Moreover, the record does not show that the property of defendants in error is not specially benefited. The making of the assessment according to benefits imports a specific finding by the council that the property was benefited. The Court of Appeals at no place in its finding of facts declared that the property was not specially benefited. When the record shows, as tMs does, that the largest property owner attacking tMs assessment is, among other parcels, holding land abutting upon this improvement for allotment purposes, it would be flying in the face of experience to claim that his property has not been specially benefited by tMs extensive street improvement. TJpon the facts, therefore, this claim that no benefits have been conferred upon the property assessed cannot be maintained.
 

 It must be conceded, however, that the charge that the assessment exceeded a statutory limitation was not put forth in the
 
 Bashore
 
 case.. Does that decision control here in principle?
 

 In principle it is difficult to distinguish between an objection to an assessment based upon a claim that no benefits were conferred and an objection based upon a claim that the statutory limitation has been violated. If either of these claims is stronger, it is perhaps that based upon an allegation of lack of benefit, for it is the established law that a special assessment upon property whffih
 
 *93
 
 has not been specially benefited is the taking of property without due compensation. In the case where the property owner claims that his land has not been benefited, the right he asserts is constitutional. In the case of exceeding a statutory limit, unless confiscation be reached, the right is only statutory. And yet the rule is generally applied that the failure of a property owner, duly notified of proposed improvement proceedings, to avail himself of the opportunity to remonstrate to the local authorities, whose duty it is to pass upon the same, will preclude him in subsequent proceedings from insisting that his property was wrongfully assessed for a portion of the cost. The rule extends, moreover, not only to objections raised to assessments upon the ground that no benefits have been conferred, but also to objections that the proceedings violate the statute. 2 Page and Jones on Taxation by Assessment, Sections 918 and 1026.
 

 It is held in
 
 City of Denver
 
 v.
 
 Dumars,
 
 33 Colo., 94, 80 Pac., 114:
 

 “1. A city charter which requires the city clerk to give notice by publication to real estate owners of a storm sewer 'district, specifying that any complaints filed within a specified time wall be heard and determined by the city council before the passage of any ordinance assessing the cost of a storm sewer against the property of the district, and which makes it the duty of the city council, sitting as a board of equalization, to hear and determine all such complaints before the assessment, ordinance is passed, affords the owners a sufficient opportunity to be heard and offer testimony on the question of assessments. * * *
 

 
 *94
 
 “7. Where the property owners of a storm sewer district made no objections before the city council to the assessments on their property, on the ground that property within the district was excluded from the assessment that should have been included, such question cannot be raised in the courts in an action to invalidate the assessments.”
 

 And in
 
 City of New Whatcom
 
 v.
 
 Bellingham Bay Improvement Co.,
 
 18 Wash., 181, 51 Pac., 360, the court held:
 

 “In an action to foreclose a street assessment lien, defendant cannot dispute the validity of the assessment, when he has had full notice of the levy and an opportunity to file his objections thereto with the city council, which by statute is vested with ample power and authority to make corrections therein and its decision authorized as a final determination of the regularity, validity, and correctness of the assessment.”
 

 In
 
 Duncan
 
 v.
 
 Ramish,
 
 142 Cal., 686, 76 Pac., 661, the third, fifth and thirteenth propositions of the syllabus are:
 

 (3) “In an action in-equity to enjoin a deed under a sale of land by a city treasurer under bonds issued upon an assessment for the payment of the expenses of improving certain streets in the city under the provisions of the street improvement law, the validity of the assessment cannot be collaterally attacked by evidence that the part of the costs of the improvement apportioned and assessed to plaintiffs’ lots exceeded the benefits thereto arising from the improvement.”
 

 (5) “Where the property owner has an oppor
 
 *95
 
 tunity given him, under the prescribed proceeding's, to appeal and contest the question of benefits bef ore the city council, as the local legislative body, by a proper remonstrance against the proceeding, the determination of that body on the subject of benefits is final, and, if he fails to do so, he thereby admits the finality of its determination.”
 

 (13) “The council having the power under the statute to declare the work of more than ordinary public benefit, and to make the assessment upon a district plan, and the property owners being given the right to object to its boundaries, and to a notice and hearing thereupon, the property owner failing so to object is concluded by the boundaries fixed, and cannot afterwards object that they did not include all the property fronting on the streets improved.”
 

 In
 
 Smith
 
 v.
 
 Carlow,
 
 114 Mich., 67, 72 N. W., 22, the court held:
 

 (2) “One who stands by and permits a drain to be constructed without taking any steps to test the validity of the proceedings is estopped to question them when called upon to pay' for the improvement.”
 

 The property owner is estopped only where he has had notice of an intention to tax his property for a portion of the cost of constructing the im provement, and an opportunity to present objections thereto.
 
 Pennsylvania Co.
 
 v.
 
 Cole
 
 (C. C.), 132 Fed., 668.
 

 Was notice given in this easel The record shows that the largest property owner had actual personal knowledge of the proceedings, prior to the completion of the improvement. It is not
 
 *96
 
 questioned that all steps preliminary to the assessment were carried out in strict conformity to the statute as to the other plaintiffs, and we are therefore remitted to the statute to learn whether notice was given.
 

 Comparing the statute covering this case with the statute covering the
 
 Bashore case, supra,
 
 it appears that the requirements of notice in the
 
 Ba-shore ease
 
 were neither so extensive nor so thorough as in the case at bar. Under the statute in that case (General Code, Section 1214), apportionment and assessment were made, and publication of the notice was had for two weeks. This was the only notice provided for in that particular proceeding, and was hardly to be compared with the exhaustive series of notices required under the statute in case of assessments according to benefits.
 

 In assessments according to benefits, under the Municipal Code Act, notice by publication is given of the passage of the resolution of necessity. The resolution of necessity is served upon the property holders in the manner provided for service of summons in civil actions. Publication is also made of the resolution to proceed with the improvement. After these steps, under Section 3847, three disinterested freeholders appointed by council report to council “the estimated assessment of such cost * * * in proportion as nearly as may be, to the benefits.” A copy of this report is then filed and open for inspection by the public.' After this report is received, under General Code, Section 3895, notice of the assessment is published for three consecutive weeks “for the inspection and examina
 
 *97
 
 tion of persons interested therein/’ After the publication of this notice, within two weeks any person who objects to an assessment has an opportunity to file his objection in writing. ¡Section 3848. An equalizing board then determines all objections to the assessment, equalizes the assessment as it thinks proper, and reports upon its findings to the council, “which may confirm, or set it aside, and cause a new assessment to be made. * * * ”
 

 In these proceedings to make assessments upon the basis of benefits, the property owners are notified four times. They have notice of the publication of the resolution of necessity, the resolution of necessity is served upon them, the resolution to proceed with the improvement is published, and finally public notice is given of the assessment levied.
 

 It is true that in Section 1214, General Code, which was construed in the
 
 Bashore case,
 
 a specific provision exists, to the effect that, when the commissioners publish the notice, the notice shall include a statement of the date when objection, if any, will be heard to the assessment. And it maybe argued that, because of the fact that no specific date is set for answer in any of the four notices given the property owner under the sections here in question, the ruling in the
 
 Bashore case
 
 should not apply. Under Section 1214, however, notice of the estimated assessment is not given personally to any property holder. No personal notice is provided for at any time under that statute, and the assessment need not be published in full. In fact, the notice given in the newspaper publication is that the assessment has been made and is on file
 
 *98
 
 in the office of the county commissioners. Even though it specifically names the date of hearing, such publication and such notice give the property holders far less opportunity of thorough knowledge of the proceedings than the notices under Sections 3814, 3818, 3847, and 3895. So far as full and complete notice is concerned actual notice was not questioned in this case, a notice much fuller than in the
 
 Bashore case.
 

 It will also be observed that under this record each of the property owners had specific notice of the definite sum for which his property was to be assessed. This is not the case in which, as sometimes occurs in this state, the council first makes the improvement and then proceeds to assess the property. The resolution of necessity was passed upon February 18, 1920; upon May 19, 1920, the assessing ordinance was passed, in which assessments for specific sums were levied upon all of the lots and parcels of land covered by this action; and the improvement was completed, according to the finding of facts, upon June '27, 1921. As a matter of fact the record does not carry out this finding, but establishes that the improvement was actually completed at some time after June 27, 1921; there being no surface upon the road upon that date. This testimony is uncontradicted upon the record. We have, therefore, a case in which the property owners had notice not merely of the passage of the resolution of necessity, but in which they had notice of the actual amount of the assessment a considerable period of time before the completion of the improvement.
 

 It is plain that the property owner who is as
 
 *99
 
 sessed for a certain amount only after the improvement is completed is in a difficult position. He cannot question the amount of the assessment before the completion of the improvement, because he was not notified of the amount of the assessment before the improvement was finished. In such case it might be questioned whether a property owner’s failure to avail himself of his statutory right to object would bar him from relief in a court of equity, and we express no opinion herein upon that specific point. In this case, how ever, no such problem arises, for the property owners had notice of the definite amount to be assessed against them long before the pavement was finished, and yet stood by and allowed the expensive improvement to proceed to completion.
 

 However, counsel for defendants in error maintains that under the facts set forth here the property owner is not compelled to file a protest with the equalization board, but may enjoin the collection of such assessment under 'Section 12075, General Oode. He grounds this proposition upon three arguments: First, that under Section 3848 the equalization board has no power to grant relief; second, that if the Legislature had meant the council’s assessment to be final it would not have passed Section 12075, providing, as above set forth, that common pleas and superior courts “may enjoin the illegal levy and collection of taxes and assessments,” and, third, that, irrespective of the failure of the property owner to object before the equalization board, council is without power to levy an assessment in excess of constitutional and stat
 
 *100
 
 utory limitations, and that assessments in excess thereof, may he enjoined.
 

 We shall first consider defendants in error’s claim that the board of equalization, described in Sections 3848, 3849, and 3850, has power to equalize assessments, but has no power to change them, and that under the facts herein, where it is alleged that an assessment has been made in excess of the 33 1-3 per cent, limitation, the equalization of assessments will not help the situation. In other words, they urge that there must be an actual reduction of assessments to work equity, and that the equalization board cannot make such reduction.
 

 Under Section 3850, however, specific power is granted the council under objection by the property owner to change the assessment. The equalization board, upon objection, shall equalize the assessment as it thinks proper. Section 3850. If it be conceded that this equalization board cannot actually change the assessment, the matter is not concluded. The section goes on to declare that the report of the equalization board shall be made to the council “which may confirm, or set it aside, and cause a new assessment to be made and
 
 * * *
 
 when the assessment is confirmed by the council it shall be complete and final.” Under this section the objection of the taxpayer does not stop with the equalization board. It goes before tfie council in the report of the equalization board. Council can change the whole assessment, council can in fact abandon the improvement, and the argument that the property owner has an appeal to a board without power to give relief is therefore
 
 *101
 
 untenable. In fact the record shows that in the instant case the council reduced the sewer assessment 33 1-3 per cent.
 

 Defendants in error next contend that General Code 'Section 12075, giving taxpayers a right to resort to a court of equity for relief from illegal assessments, would not have been passed if the Legislature had not intended that the council of a municipality should not have the final determination of the benefit conferred upon any property affected hy the street improvement. We do not here hold that a plaintiff cannot apply to a court of equity ■ to enjoin an illegal assessment. We simply hold that the taxpayer first has to take the steps required by statute to secure relief, and that, until he has taken those steps, a court of equity cannot assume jurisdiction on the ground that a remedy has been denied him. After the preliminary steps have been taken and the plaintiff has exhausted his statutory remedy, he has full right to apply to a court of equity under Section 12075, and, if he is entitled to relief, equity will grant it.
 

 Moreover, Section 3850 of the General Code does specifically make the assessment, when confirmed by council, complete and final. If the Legislature had meant that phrase to indicate nothing it would have been omitted. If a taxpayer may ignore his statutory relief and come into a court of equity setting up the same matters which should have been presented before the equalization board and council, the provision that the assessment when confirmed by council is final is virtually repealed.
 

 However, defendants in error further contend that without regard to the fact that council ex
 
 *102
 
 ceeded the 33 1-3 per cent, limit, the protestan! is not compelled to go before the equalization board and council before coming into a court of equity, for the reason that the council is without power to levy such an assessment.
 

 We can see no distinction upon this point between this case and the
 
 Bashore case.
 
 In the
 
 Bashore case,
 
 the plaintiff applied for an injunction upon the ground that the county commissioners had assessed his property where no special benefits whatever had been conferred. If the county commissioners had done that, they had exceeded their authority, and they were taking property without due compensation. This is not a case where council has no statutory authority to make the assessment of the kind contemplated. The assessment is authorized by law, and all steps taken in regard to the proceedings were taken in due conformity with law. The gist of the question raised is as to the amount of the assessment. In the
 
 Bashore case
 
 also the only question raised was as to the amount of the assessment, it being claimed that it was excessive or not justified in proportion to benefits. In that case the court held that as plaintiff failed to employ his statutory remedy, he could not inquire into that question in a court of equity. In this case, also, as defendants in error failed to avail themselves of the statutory remedy, they are not entitled to question proceedings otherwise perfectly regular upon the ground that council has exceeded the statutory limitation. It is not for the defendants in error, after notice was fully given, and after having in their hands a remedy which might have availed
 
 *103
 
 them entirely, to come into a court of equity and throw back upon the community the cost of expensive improvements benefiting the whole property, Because of this element in the case, decisions cited on behalf of the defendants in error are not in point.
 

 Up to this point we have mainly considered the Ohio statutes and the Ohio decisions upon this specific point, but there is substantial authority in favor of our position. A recent case emanating from the 'Supreme Court of Washington, decided in 1911, makes the same holding as that of the court in the present case upon practically the same facts.
 
 Rucker Bros.
 
 v.
 
 City of Everett,
 
 38 L. R. A. (N. S.) 582 (66 Wash., 366, 119 Pac., 807). The syllabus in this case reads as follows:
 

 “An assessment for a local improvement cannot be attacked by taxpayers because it exceeds 50 per cent of the assessed valuation of the property in the taxing district, contrary to the provisions of the municipal charter, if no objection was made to the council before confirmation of the assessment, or appeal taken therefrom, where the statute provides that whenever an assessment roll shall be confirmed after notice, the regularity, validity, and correctness of the assessment cannot in any manner be tested or questioned by any person not filing objections to the roll prior to its confirmation, and that such confirmation shall be conclusive.”
 

 While this case is not identical with the instant case in the reading of the statute, since the Washington statute provided that the regularity, validity and correctness of the assessment could not in
 
 *104
 
 any manner be tested or questioned by any person in filing objections to the roll prior to its confirmation, the holding is more drastic than the one here made in that the municipal charter allowed assessments up to 50 per cent, of the assessed valuation of the property in a taxing district.
 

 Moreover, the provision in the Ohio statute that “when the assessment is confirmed by the council it shall be complete and final,” practically amounts to a statement that the assessment' cannot be attacked and that the confirmation is conclusive.
 

 Other cases of importance which set forth the same general principle are
 
 Ferry
 
 v.
 
 Tacoma,
 
 34 Wash., 652, 76 Pac., 277;
 
 Methodist Episcopal Church
 
 v.
 
 City of New York,
 
 55 Howard’s Practice, 57;
 
 Owens
 
 v.
 
 Marion,
 
 127 Iowa., 469, 103 N. W., 381.
 

 In this view of the question, it is unnecessary to decide at what time the value of the improvement should have been calculated. Whether or not, as contended by the plaintiff in error, there is no record of an excessive assessment before us, the fact remains that the defendants in error, by sitting still through every step -of the long proceedings, through the notice of the resolutions, through the estimated assessments by the freeholders, through the notice of the assessment, have deprived themselves of right to question the action of council.
 

 Judgment reversed.
 

 Marshall, C. J., Jones, Matthias, and Hay, JJ., concur.
 

 Robinson, J., concurs in the judgment.
 

 Wanamaker, J., not participating.