THE BALTIMORE & OHIO RD. CO. v. VILLAGE OF OAK HILL.

*Municipal corporations—Assessment of railroad for street improvement—Instrument insufficiently executed to convey title to right of way—Railroad entitled to compel legal conveyance—Railroad could purchase land in addition to limit in statute authorizing condemnation—Railroad took easement in land necessary for right of way—Railroad not owner of any part of land used for street—Acceptance of village street by special ordinance unnecessary, when—Section 3723, General Code—Council not required to divide railroad property into lots before assessing—Section 3813, General Code—Railroad property cannot be assessed greater depth than other assessed lots—Property owner questioning assessment not bound to first proceed before equalization board—Section 3850, General Code—Railroad, enjoining reassessment, must prove value of its property—Value of improvement to assessed property not judicial question in injunction proceeding—Right of way, owned in fee or easement, liable for assessment—Presumption that benefits equal assessment of railroad right of way—Confiscation of property by assessment not established by testimony.*

1. Instrument purporting to grant and release to railroad right of way over land, not acknowledged and bearing name of but one witness, was insufficient under statute to convey legal title, but would entitle railroad to compel legal con-

veyance, since instrument was a contract which has been performed by railroad.

2. General Railroad Act of 1848 (46 Ohio Laws, 40), Sections 1, 9 and 14, limiting amount of land which may be acquired by railroad company through appropriation proceedings, did not limit amount which railroad incorporated by Act of Feb. 20, 1849 (47 Ohio Laws, 151), might acquire by purchase, and hence grant of right of way to railroad "of such width as law provides may be used by company," did not fix limit of 100 feet, but railroad took only so much land as was necessary to construct and maintain its railroad.

3. Under grant and release of right of way to railroad of such width as law provides, railroad took easement in only so much land as was necessary to construct and maintain railroad right of way, and extent of such taking may be shown by subsequent conduct of railroad company under duty to indicate by practical use amount of land found necessary for right of way.

4. Where railroad company, granted so much land for right of way as law provides, did not accept easement in part of land on which street was constructed, railroad did not become owner of any part of land used for street.

5. In proceedings by railroad company to enjoin collection of village assessment for street improvement, railroad could not claim that assessment was invalid because street was never accepted by special ordinance, as provided for in Section 3723, General Code, since such act applied to cities, not villages, and dedication of public way by plat of owner was sufficient without action by public authorities, since act was only intended to protect municipality from having undesirable street forced on it.

6. Under Section 3813, General Code, protecting owner from having assessment levied against his property to greater depth than property of other owners, village council was not required to divide land of railroad into lots before making assessment, where other lots abutting on improvement were of greater depth than property of railroad.

7. Under Section 3813, General Code, protecting owner from having assessment levied against his property to greater depth than property of other owners, railroad seeking relief from assessment under this statute would only be

entitled to discharge of assessment lien on so much of its property as exceeded depth of other assessed lots.

8. Owner of property in questioning assessment for street improvement is not bound in all cases to first apply to local authorities for relief contemplated by Section 3850, General Code.

9. Railroad seeking to enjoin assessment for street improvement can claim no relief, under Section 3819, General Code, limiting sum of assessments in any five-year period to one-third of value of property, where it offered no testimony as to value of its property, but offered only evidence as to what its land would be worth if not occupied by railroad.

10. In proceedings to enjoin assessment for street improvement, question of value of improvement to assessed property is not generally judicial question.

11. Railroad right of way, whether owned in fee or held by easement, is liable for assessments for street improvements in same manner as other property.

12. Railroad right of way, as well as individually owned abutting property, is presumed to derive from street improvement benefit equivalent to amount of assessment so long as assessment is made within limitations imposed by law, provided no fraud intervenes and assessment does not substantially exhaust owner's interest in land.

13. In proceedings by railroad to enjoin assessment for street improvement, testimony by witness that he thought railroad would not be benefited, but that street could be used for railroad purposes, did not tend to show that assessment was confiscation of plaintiff's property calling for judicial intervention.

(Decided January 20, 1927.)

APPEAL: Court of Appeals for Jackson county.

*Mr. John P. Phillips,* and *Mr. Frank De Lay,* for plaintiff.

*Mr. E. E. Eubanks,* for defendant.

MAUCK, P. J. The plaintiff, a railroad corpora-

tion, owns and operates a line of railway through the village of Oak Hill. The council of that village, on April 1, 1922, levied a special assessment against the railroad company for the improvement of East street in said village, said assessment amounting to something over $3,000. It is now sought to enjoin the collection of that assessment, the claim being made that the improvement in question was in part or in whole made not upon a public street of the village, but upon land belonging to the railroad company itself. It is further claimed that no benefits accrued to the railroad from said improvement and that this assessment, together with an assessment previously made against the railroad within the last five years for a similar improvement, exceeds one-third of the value of the property assessed. The defendant denies that the improvement was not made upon a public street of the village, and denies that the railroad owns any part of the land upon which the improvement was made. It denies that no benefits accrued to the railroad by virtue of the improvement and that the assessments within a five-year period exceeded one-third of the value of the property, and further claims that the plaintiff is in no position to raise the question of benefits, because it failed to file any objections with the clerk of the council to the assessment as provided by Section 3848, General Code. To meet this claim of the village that it did not file a complaint with the clerk the plaintiff has asked leave in this court to file an amendment to its petition, and in that amendment it pleads that the assessing ordinance was published on March 2, 1922, and again on the 9th and 16th days of that month, and at no other time,

and that, said assessment ordinance having been passed April 1, 1922, it was adopted before the expiration of the two weeks time in which plaintiff might have filed its complaint under Section 3848. By this same amendment plaintiff also says that said assessment is illegal because plaintiff's lands were not at the time of said assessment subdivided into lots, or separately assessed for taxation, and were not of the same depth as the other lots assessed on the other side of the street, and that the council did not for the purpose of such assessment fix the value of such lands to the end that the assessment thereon might be a fair average of the assessed value of the other lands in the neighborhood. Leave is now given for the filing of this amendment to the petition, whose averments will be considered as denied by the defendant.

The first question is that relating to the title to the land upon which this improvement was made. The plaintiff claims title to the land now occupied by it under an instrument dated August 6, 1851, and recorded only in 1902. It reads as follows:

"Know all men that John T. Jones, of the county of Jackson in the state of Ohio, for and in consideration of the sum of thirty dollars to me in hand paid by the Scioto & Hocking Valley Railroad Company, do hereby grant and release to said company for the sole and only use of a railroad, the right of way, over any land owned by me in the county of Jackson and which lie on the line finally to be adopted by said road, to hold and to use a strip thereof of such width as the law provides may be used by said company for that purpose; also the free use of the timber, stone, gravel, etc., thereon, and the privilege of hauling said materials when

necessary over other parts of said lands, in construction or repair of said road.

"It being understood that said road shall be constructed across said lands in the manner calculated to do the least possible injury thereto, consistent with its usefulness, permanency, and cheapness.

"It is understood and agreed that the said company will construct two cattle breaks, one where the said railroad enters upon and leaves my farm. August 6, 1851.

"John T. Jones.    [Seal.]

"Witness:
"J. W. Webb."

This instrument was not acknowledged and bore the name of but one witness, and was, consequently, not such an instrument as the statute required for the conveyance of legal title. The Scioto & Hocking Valley Railroad mentioned in the instrument is the predecessor of the plaintiff. While this instrument was admittedly insufficient to convey the fee, it, nevertheless, is such an instrument as would entitle the railroad company to compel a legal conveyance, inasmuch as it is a contract which has been performed on the part of the railroad company. *Junction Rd. Co.* v. *Ruggles,* 7 Ohio St., 1.

It is claimed now that, inasmuch as this contract undertook to grant a strip "of such width as the law provides may be used by said company for that purpose," it was thereby intended to grant a strip 100 feet in width. The only authority cited in support of that view is an unreported opinion of the circuit court of this district at Portsmouth in 1902. The informal opinion of that court afford-

ed us cites no sufficient authority to support that conclusion.

In *Junction Rd. Co.* v. *Ruggles, supra,* the Supreme Court seemed to recognize that a strip 100 feet wide had been conveyed by a similar instrument authorizing the railroad company to take ''so much of said land as said company are by their charter authorized to take for the purposes of the location and construction of said road.''

In that case, however, the Supreme Court was dealing with a charter granted to the Ohio Railroad Company by special act (34 Ohio Loc. Laws, 322) which invested that company with power to locate and construct a road ''not exceeding one hundred feet wide.''

In that case it was clear that the grantee could acquire by contract no more than 100 feet, and the conveyance was held to convey the maximum strip which the vendee was capable of receiving. No such limitation, however, appears in the charter of the Scioto & Hocking Valley Railroad Company, which was incorporated by a special act found in 47 Ohio Laws, 151. By that act the Scioto & Hocking Valley Railroad Company was made subject to the provisions of the General Railroad Act of February 11, 1848 (46 Ohio Laws, 40), the first section of which act empowered railroad companies to ''acquire and convey at pleasure all such real and personal estate as may be necessary and convenient to carry into effect the objects of the incorporation.''

It was further authorized by Section 14 of that act to acquire by purchase any land in the vicinity of the road so far as it might be found convenient by said company to secure the right of way. The

ninth section of the act authorized the company
by condemnation proceedings to acquire so much
land "as may be deemed necessary for its railroad,
including necessary side tracks, depots, work shops
and water stations, and materials for the con-
struction, except timber, a right of way over ad-
jacent lands, sufficient to enable such company to
construct and repair its road."

It was further provided in the same section in
case the land was acquired by appropriation pro-
ceedings that after payment therefor "it shall be
lawful for such corporation to hold the interests
in such lands or materials thus appropriated, and
the privilege of using any materials on said road-
way within fifty feet on each side of the center of
such roadway, for the uses aforesaid."

The general act of 1848, therefore, while it
limited the amount of land which might be acquired
by a railroad company through appropriation pro-
ceedings, did not limit the amount which such com-
pany might acquire by purchase. *Walsh* v. *Barton,*
24 Ohio St., 28. When, therefore, the Scioto &
Hocking Valley acquired from Mr. Jones a strip
"of such width as the law provides may be used by
said company for that purpose," it did not fix a
limit of 100 feet, or of any amount save such as
might be accepted by said company "for the sole
and only uses of a railroad, the right of way."

The nature of the right created in the railroad
company by this instrument is settled by *Platt* v.
*Pennsylvania Co.,* 43 Ohio St., 228, 1 N. E., 420, and
*C., H. & D. Ry. Co.* v. *Wachter,* 70 Ohio St., 113,
70 N. E., 974. In the *Platt* case it was determined
that a railroad right of way acquired by appropria-
tion proceedings under the act of 1848 created only

an easement in favor of the railroad, and not a conveyance of the fee, and it was further determined in that case, that, regardless of the width of the strip involved in the appropriation proceedings, the company held an easement only in so much thereof as might prove to be necessary for the road, and that the extent of this necessity might be shown by the subsequent action of the appropriating company. In the *Wachter case* it was held that such a release of a right of way as we have in the instant case created only an easement, and that this right is not different from or greater than would have resulted if the right of way had been taken in appropriation proceedings; that is to say, the railroad company in the instant case took only so much land under this contract as was necessary to construct and maintain its railroad, and the extent of such taking may be shown by the subsequent conduct of the railroad company. We find, accordingly, that the purpose of the instrument was not to grant a strip 100 feet wide, but to create an easement in such an amount of land, more or less than 100 feet wide, as the railroad company might find necessary to construct and maintain its right of way. It was therefore incumbent upon the railroad company to indicate by practical use the amount of land it found necessary to constitute its right of way.

"It is a general principle that when a right of way, or other easement, is granted by deed, without fixed and defined limits, the practical location and use of such way, or easement, by the grantee, acquiesced in by the grantor, will have the same legal effect as if it had been fully described by the terms of the grant." *Warner* v. *Railroad Co.*, 39 Ohio St., 70, 72.

We do not consider, however, the question whether or not this instrument was intended to create an easement in a strip 100 feet wide, and no more, as necessarily decisive of the question in any event. Even though there were read into this instrument a statutory provision that the strip to be taken by the railroad company was to be limited to the 100 feet that might have been taken in the appropriation proceedings, the railroad company would nevertheless be limited to its necessities and could not claim more than it found that it reasonably required. The general rule is laid down in 22 Ruling Case Law, 850, as follows:

"A railroad company is not bound to take the entire width of land allowable by law for its right of way but may define the limits thereof, so as to exclude whatever is not necessary to the construction and operation of its road. While the proper time to make this definition is when the appropriation is made, it may exercise the right afterward within a reasonable time. A deed granting to a railroad company the right of way for its railroad and the right to construct said road agreeably to and in accordance with the railroad incorporation laws of a state, without naming the width of the tract granted, will give the grantee a strip as wide only as it actually takes and uses and not as wide as it is allowed to take by the railroad incorporation laws. Where a railroad company's right of way is founded alone upon the acquiescence of the landowner, it can extend to no other land than that which has been actually taken."

A leading text-book says:

"Where the intention to convey a fee does not appear, as in case of the conveyance of a 'right of

way' for the railroad through certain lands, the company takes an easement only. When the width of the right of way is not specified in the grant the company will, in general, acquire only so much as is actually taken and used, or is reasonably necessary, and the acts and declarations of the parties are admissible to determine the width.'' 2 Elliott on Railroads (3d Ed.), Section 1158.

It not only appears from the record that the railroad company never occupied any part of what is now East street, and never did anything to indicate its acceptance of an easement therein, but it appears that elsewhere in Oak Hill it has executed deeds affirmatively showing that the right of way accepted and enjoyed by it under this grant is much less than 100 feet and about the same width as that now held by it east of the street in question.

It follows, therefore, that inasmuch as the railroad company never accepted as part of its right of way any of the land now constituting the street in question the company is not now and never has been the owner of any part of the land in question.

It is further argued, however, that even if East street does not in fact belong to the plaintiff company it is nevertheless not a street of Oak Hill, and that not being such street an assessment for its improvement is invalid. This argument is predicated on the doctrine laid down in *Merchant* v. *Waterman,* 3 Western Law Monthly, 48, and rests on the contention that the plat of Oak Hill, whereon East street is delineated as a public way, had never been accepted by special ordinance as provided for in Section 3723, General Code. This argument is unsound for several reasons.

It is true, as plaintiff contends, that what is now

Section 3723 was originally passed in 1852 (50 Ohio Laws, 244, Section 63). But it is also true that when passed in that year it only applied to cities, and Oak Hill was never a city. Prior to 1852 a dedication of a public way by the plat of the owner was a sufficient statutory dedication without any action thereon by the public authorities, and the act referred to only attempted to qualify the owner's right to make a statutory dedication when the highway was within the confines of the city. Moreover, it is perfectly apparent that the section referred to was passed solely to protect a municipality from having an undesirable street forced upon it. It was not intended to inhibit a common-law dedication. *Wisby* v. *Bonte,* 19 Ohio St., 238. Nor does it apply "to cases where streets are established as such by public use, and by acts of the city authorities improving them as such." *City of Steubenville* v. *King,* 23 Ohio St., 610, 613.

It follows, therefore, that the plaintiff was entitled to no relief in the instant case under Section 3723.

Complaint is also made that the plaintiff's land consisted of a single body some 800 feet long and should have been divided by the council into lots for assessment purposes as provided by Section 3813, General Code. No reason has been advanced for the doing of this vain thing, but it is urged that the council should have made a purely imaginary allotment for assessing purposes. Both reason and authority are against this contention. The purpose of the statute is to protect the owner from having an assessment levied against his property to a greater depth than the property of other owners subjected to the same assessment. In this

case the plats in evidence show that all the other lots abutting on the improvement are of greater depth than the property of the railroad, and it follows that no possible purpose would have been served by a division of the plaintiff's land by purely imaginative lot lines. The only relief to which the plaintiff would be entitled under this section would be the discharge of the assessment lien on so much of its property as exceeded the depth of the other assessed lots. *Griswold* v. *Pelton, Treas.*, 34 Ohio St., 482. As there was no such excess there is no possibility of relief on this ground.

We now come to two questions regarding values, the first relating to the value of the property assessed and the second relating to the value of the benefits conferred upon the property by the improvement for which the assessment is made. The defendant has pleaded that these issues are not open to our consideration because under the doctrine of *City of Cuyahoga Falls* v. *Beck*, 110 Ohio St., 82, 143 N. E., 661, the plaintiff was bound to make its application for relief to the municipal authorities. The owner of the property, however, in questioning assessments, is not bound in all cases to first apply to the local authorities for the relief contemplated by Section 3850, General Code (*Baxter* v. *Van Houter*, 115 Ohio St., 288, 153 N. E., 266), and whether he must proceed under Section 3850 in any case where the assessment is made on the front foot plan, or where the assessment is not made until after the improvement is completed, seems to be an open question so far as the Supreme Court is concerned. We accordingly assume, without deciding, that the plaintiff was not bound to object to the assessment and to attempt to secure re-

lief under Section 3850, and that so far as that question is concerned it can have determined in this case the questions thus sought to be raised.

The first of the questions is whether the assessment added to an assessment on the same property for improving another abutting street in 1918 is invalid under Section 3819, General Code. That section limits the sum of the assessments in any five-year period to one-third of the value of the property. Some question has been made by the defendant as to whether the plaintiff has really shown the amount of the assessment levied against this property in 1918 for the improvement of the other street. We find no difficulty, however, in ascertaining the amount of the two assessments to be just as the plaintiff claims. So that the only question on this phase of the case is whether or not the lands now being assessed are worth three times as much as the combined assessments for the improvement of Railroad street and East street. On this question we find an utter failure of testimony in behalf of plaintiff's position, because it has offered no testimony as to the value of its property. The only evidence adduced by the plaintiff went to the question of what the land occupied by the railroad would be worth if it were not occupied, one witness testifying that the bare land would be worth $3,000, and the other that it would be worth $4,000. None of the evidence offered by the railroad touched the value of the property improved as it is, notwithstanding the fact that such information would be peculiarly within the plaintiff owner's power to prove. Because of an utter failure of proof the plaintiff can have no relief under Section 3819.

The other question of value, that is, the question of

the value to the assessed property of the improvement for which the assessment is made, is not, generally speaking, a judicial question. The views of this court along that line have been expressed in *Rogers* v. *Johnson, Treas.,* 21 Ohio App., 292, 153 N. E., 167, and to those views we adhere. The difference between the *Rogers case* and the case at bar is that in the former case we were considering the rights of an individual owner of abutting property, while in the instant case we are dealing with the property of a railroad company. In some jurisdictions it has been held that the right of way of a railroad is not subject to assessment for the improvement of an abutting street, on the theory that no benefit can accrue to the railroad right of way by virtue of such improvement. In other jurisdictions a railroad right of way is held exempt for other reasons. But the general rule is that a railroad right of way, whether owned in fee or held by easement, is liable for such assessments as other property is. The authorities bearing on the various views taken of this question are assembled in 37 A. L. R., beginning with page 219. The author of that monograph places Ohio among those states where the right to assess the railroad right of way is sustained, and does so on the authority of *Northern Indiana Rd. Co.* v. *Connelly,* 10 Ohio St., 159. It is unnecessary to quote from that opinion, but it clearly establishes the doctrine in this state that a railroad right of way, as well as individually owned abutting property, is presumed to derive from a street improvement a benefit equivalent to the amount of an assessment made therefor so long as such assessment is made in a manner and within the limitations imposed by law, provided no fraud

intervenes and the assessment does not substantially exhaust the owner's interest in the land. The same principle was recognized and followed by the Supreme Court in sustaining assessments made against railroads for the improvement of highways under the old, now repealed, one-mile and two-mile pike assessment laws. These laws were sustained as constitutional, not on the theory that they were tax laws, but that they were proper exercises of the right of special assessment. *State ex rel. Eastman* v. *Com'rs. of Warren Co.,* 17 Ohio St., 558. A railroad company unsuccessfully sought to enjoin the special levy made against it under one of these assessment laws on the ground that no benefit accrued to it. Of this contention the Supreme Court, in *Railroad Co.* v. *Commissioners,* 48 Ohio St., 249, 27 N. E., 548, said:

"Where a tax is levied for a public purpose, and the rule of equality has been observed in making the levy, its payment cannot be defeated by showing that no direct, or pecuniary, benefit will accrue to either the property, or its owner, from the proposed expenditure of the funds raised by the tax."

While the court in that case employed the word "tax," instead of the word "assessment," in the syllabus quoted, the levy made, while called a tax, was in law actually an assessment.

In those states in which the right to assess railroad rights of way is denied, and this is especially true of the state of Illinois, cited by the plaintiff in the case at bar, it is said that the right of way is exempt because the right of way will be no more valuable for railroad purposes after the improvement than before. This is not only contrary to the doctrine of the Ohio cases cited above, but con-

trary to at least two other holdings of the Supreme
Court. In *Lima* v. *Cemetery Assn.*, 42 Ohio St.,
128, 51 Am. Rep., 809, it was determined that the
property used exclusively for cemetery purposes
was subject to assessment; and in *Jackson, Treas.*,
v. *Board of Education*, 115 Ohio St., 368, 154 N. E.,
247, it was held that assessments might be levied
upon the property of a board of education being
used for school purposes. Certainly if cemeteries
and school grounds will be deemed to be benefited
by street paving it cannot be said that a railroad
right of way is not similarly benefited. It cannot
be said as a matter of law, therefore, that there is
any warrant in this state for treating an assessment
against a railway in any different way from an
assessment on other property.

What then is the case of fact made by the plain-
tiff? Two witnesses testify. One witness being
inquired of in chief as to whether the improvement
would be of any benefit to the railroad in the way
of "bringing customers or bringing facilities to the
railroad or any other matters" replies that he
thinks it would not be of any benefit and does not
see how it could be of any service or help to the
railroad. On cross-examination he says, however,
that every street improvement increases the value
of adjacent property and he presumes such would
be the case here. The other witness says, "I
wouldn't think it would be any benefit to the rail-
road company," but he says that shows unload
from the cars on that street and that the street is
used somewhat by patrons in hauling to and from
the railroad. This testimony does not tend to show
that the assessment is a virtual confiscation of the
plaintiff's property calling for judicial intervention.

It only tends to show that because a particular owner at a particular time is using his property in a particular way such owner will not avail himself of the improvement when made.

The complete answer of both law and fact to the position taken by the plaintiff, with this testimony as a basis, is found in the opinion of Mr. Justice Holmes in *L. & N. Rd. Co.* v. *Barber Asphalt Paving Co.*, 197 U. S., 430, 25 S. Ct., 466, 49 L. Ed., 819. After holding that the law does not require a court to find an equivalent of benefits to sustain an assessment on specific property the distinguished jurist points out that the Legislature is warranted in assuming that apart from the specific use to which a particular tract is devoted the land adjacent to a paved street is benefited to the extent of the cost of such paving, and that to whatever use the occupant may desire to put the property he will not be relieved from the assessment because he anticipates that he will not be benefited thereby. He says that the plea that the railroad will never benefit from the improvement is at best only a prophecy that may not become absolute, and that in any event "it is enough" to say "that the land could be turned to purposes for which the paving would increase its value."

The testimony was, accordingly, wholly insufficient to show that the assessment constituted any unlawful taking of the property of the plaintiff.

The finding will be for the defendant.

*Decree for defendant.*

Sayre and Middleton, JJ., concur.