MACKEY, County Treasurer, et al. v. CHOCTAW, O. & G. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. October 14, 1919.)

No. 5215.

1. PUBLIC LANDS ⬅92—GRANT OF RAILROAD RIGHT OF WAY OVER INDIAN LANDS NOT AFFECTED BY REVERSIONARY INTEREST.

The character of a railroad right of way over Indian lands, granted by Congress in perpetuity, and which with the consent of Congress was leased to another company for 999 years, *held* not affected by the Indian reversionary interest, so as to exempt it from special assessments for local improvements.

2. MUNICIPAL CORPORATIONS ⬅425(3)—RAILROAD RIGHT OF WAY SUBJECT TO SPECIAL ASSESSMENT.

The general rule, which is also the rule in Oklahoma, is that a railroad right of way, whether owned in fee or held in easement, is real estate property or ground which may be subjected to special assessment for the cost of local improvements.

3. MUNICIPAL CORPORATIONS ⬅479—IDENTIFICATION OF PROPERTY FOR SPECIAL ASSESSMENT.

A railroad right of way through a city, not platted in lots and blocks, *held* sufficiently identified under a state statute in proceedings for special assessment thereof for a local improvement.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by the Choctaw, Oklahoma & Gulf Railroad Company and the Chicago, Rock Island & Pacific Railway Company against B. W. Mackey, County Treasurer of Hughes County, Okl., and others. Decree for complainants, and defendants appeal. Reversed.

J. B. Furry, of Muskogee, Okl. (E. C. Motter, of Muskogee, Okl., on the brief), for appellants.

C. O. Blake, of El Reno, Okl. (R. J. Roberts and John E. Du Mars, both of El Reno, Okl., on the brief), for appellees.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. This is an appeal from a decree in a suit by the railroad companies enjoining the city of Holdenville, Okl., and the county treasurer, from enforcing special assessments against the railroad right of way and station grounds for the improvement of Oklahoma avenue, upon which the right of way and grounds abut. The railroad companies claim the assessments are invalid because (1) of the peculiar character of their interest in the property and of the reversionary estate; and (2) there was not a sufficient identification

of the property in the proceedings of the mayor and city council. The first of these contentions assumed three phases. It was urged that the reversionary estate was in the Creek Nation of Indians and held in trust for them by the United States; that the congressional grant of the easement for railroad purposes charged the railroads with certain continuous public duties and services which would be defeated or impaired by the enforcement of the assessments in question; and that the laws of the state of Oklahoma gave no authority to impose such charges on railroad rights of way. The trial court granted the injunction because of the Indian character of the reversionary estate and the particular purposes for which Congress granted the railroad easement.

[1] The town (now city) of Holdenville was established, surveyed, and platted into lots, blocks, streets, and alleys under the direction of the Secretary of the Interior and according to the provisions of the Original Creek Agreement. The lands included were exempted from allotment. The railroad right of way through the town, with enlarged width for station grounds, comprised a tract 300 feet wide and 3,000 feet long. It was embraced within the corporate limits of the town, and was flanked on both sides by public streets; Oklahoma avenue, improved as above stated, being one of them. Other platted streets touched the grounds at right angles on both sides. In time, passenger and freight stations, elevators, warehouses, etc., were built on the grounds, and access to them necessarily required the constant use of the contiguous streets. The easement of the Choctaw, Oklahoma & Gulf Railroad Company, one of the plaintiffs, was granted in perpetuity, and with the consent of Congress it leased its railroad and appurtenances, including the grounds in question here, to its coplaintiff, the Chicago, Rock Island & Pacific Railway Company, for 999 years. The latter company is operating the leased railroad as one of the main lines of its interstate system. We think the case should be regarded as though the right of way and grounds were of the customary character, unaffected by the Indian reversion. The estate of the Indians is too remote for practical consideration, and if the assent of the government as trustee or guardian that the property should bear burdens as similar railroad property elsewhere were necessary it might reasonably be inferred from the circumstances above recited. The special assessments in question are not occupation taxes, nor imposed upon the operations of the railroad companies as governmental agencies, and have no close touch or relation to the Indian interest as was the case in Choctaw, O. & G. R. Co. v. Harrison, 235 U. S. 292, 35 Sup. Ct. 27, 59 L. Ed. 234. The special assessments are against the railroad property which for tax purposes may be regarded as wholly owned by the companies.

[2] It is suggested that the enforcement of the assessments might disable them from performing their duties to the government and the Indians. But if it is their duty to pay, and to save the property from tax sale and dismemberment, they cannot well plead their own default. It is settled that a railroad right of way is subject to general taxation, even one granted by Congress over an Indian reservation (Maricopa &

Phoenix R. Co. v. Arizona Territory, 156 U. S. 347, 15 Sup. Ct. 391, 39 L. Ed. 447), and there is no such difference in principle between a general tax and a special assessment which proceeds on the theory of a direct and special benefit, that makes for a different conclusion. The general rule, sustained by the weight of authority, is that a railroad right of way, whether owned in fee or held in easement, is real estate, property, or ground which may be subjected to assessment for the cost of local improvements. See Louisville & N. R. Co. v. Barber Asphalt Paving Co., 116 Ky. 856, 76 S. W. 1097, affirmed so far as the Constitution of the United States is concerned in 197 U. S. 430, 25 Sup. Ct. 466, 49 L. Ed. 819; Dillon on Munic. Corp. § 1451 (5th Ed.) p. 2586. We think that is also the rule in Oklahoma. See M., K. & T. Ry. Co. v. City of Tulsa, 45 Okl. 382, 145 Pac. 398, involving a right of way owned in fee but not otherwise different from the one here; also Oklahoma Railway Co. v. Severns Paving Co. (Okl.) 170 Pac. 216, and Oklahoma City v. Orthwein, 258 Fed. 190, —— C. C. A. ——, recently decided by this court.

[3] Was there a sufficient identification of the property? A state law provides:

"If any portion of the property abutting upon such improvement shall not be platted into lots and blocks, the mayor and council shall include such property in proper quarter block districts for the purpose of appraisement and assessment, as herein provided."

That was done. The city engineer prepared and submitted to the city council a map in which the railroad right of way and station grounds were divided into quarter block areas by projecting the lines of contiguous streets and block boundaries, and designated them by arbitrary numbers. The map was duly adopted by that body and the designations of the quarter blocks were afterwards followed in making the assessments. The temporary absence of the map from the office of the city clerk did not invalidate that step in the proceedings. The agents of the plaintiffs were fully advised of what was being done and of the progress of the improvement. No question was raised until after the work was complete. The map was inadvertently sent to the bond purchasers, but the plaintiffs were not misled or prejudiced.

The decree is reversed, and the cause is remanded, with direction to dismiss the bill.