In the Matter of the Appeal of The Chicago and North Western Railway Company;

RE: Assessment for street improvements by City of Riverton, Fremont County, Wyoming, and objections thereto.

THE CHICAGO AND NORTH WESTERN RAILWAY COMPANY,

*Appellant,*

vs.

THE CITY OF RIVERTON, FREMONT COUNTY, WYOMING,

*Respondent.*

(No. 2553; July 15th, 1952; 246 Pac. (2d) 789)

For the appellant the cause was submitted upon the brief of W. M. Haight of Riverton, Wyoming; Neely, Otis & Cockle of Omaha, Nebraska; Nelson Trottman of Chicago, Illinois, and oral argument by Mr. Haight and Mr. Trottman.

For the respondent the cause was submitted upon the brief and also oral argument of R. Lauren Moran and C. J. Murphy of Moran & Murphy, of Riverton, Wyoming.

88

## OPINION

Blume, Chief Justice.

The tracks of the Chicago and North Western Railway Company run diagonally through the city of Riverton in this state in a northeast-southwesterly direction. On April 30, 1951, the city adopted a resolution of intention for paving, curbing and guttering the streets lying westerly and northwesterly of these tracks and created District No. 2 for that purpose. An assessment roll was prepared and hearing thereon set for December 22, 1951. Notice was published for the time and place of the hearing, directing all persons to file written objections with the City Clerk on or before that date. On December 20, 1951, the railroad company herein filed its written objection to the assessment roll, stating:

First, that the property described in the assessment roll does not correctly describe the real estate owned by the railroad company within the assessment district. The assessment roll, showing the manner in which the assessment was made, was attached to the objection.

Second, that the real estate owned by the railroad company consists of a right of way and tracks and is not the kind of property contemplated by the statutes of Wyoming to be considered specially benefited. That

no special benefits are conferred by the improvements on the railroad company and there is no statutory authorization for the assessment of railroad property for local improvements.

Third, that the resolution of intention is invalid for the reason that it was not adopted at a legal meeting of the city council of Riverton.

Fourth, that the contract for the improvements was not let to the lowest bidder.

The city council overruled these objections and proceeded to make assessments against the property located in the district including property of the railroad company. The manner in which the assessments against the railroad property was made will be mentioned more particularly hereafter. Thereupon the appeal was duly taken to the district court in which the same objections were urged as above mentioned. The district court affirmed the assessments made against the railroad company's property in the sum of $1489.14 and from that judgment of the district court, an appeal has been taken to this court by the railway company. We do not find any merit in objections three or four above mentioned, but shall discuss the first and second objections above mentioned in detail and in reverse order. The statutes of this state governing assessments, and referred to by counsel in their arguments, are as follows: Section 29-2002 provides as follows: "The council of any such city or town is hereby authorized and empowered, whenever it may deem it expedient to order the whole or any part of any street or streets to be improved and to determine the character, kind and extent of such improvement, and if such improvement be paving, it shall designate the kinds of pavement to be used, and to provide for the maintenance thereof for a period of not to exceed five (5) years and to include the cost of such maintenance in the assessment for the making

of the improvement, and to levy and collect an assessment upon all lots, parts of lots, and parcels of land specially benefited by such improvements to defray the whole or any portion of the cost and expense thereof, and to determine what lots, parts of lots, and parcels of land are specially benefited by such improvements, and the amount in which each said lots, part of lot or parcel of land is benefited." Section 29-2006 provides for the creation of improvement districts. Section 29-2019 is the main section of our statute involved herein and may, for the purpose of this case be divided into different parts. Part one provides as follows: "The assessment district shall include all the property between the termini of said improvement, abutting upon, adjacent, vicinal or proximate to the street, avenue, lane, alley, boulevard, park drive, parkway, public place or square proposed to be improved to a distance back from the marginal lines thereof to the center line of blocks facing or abutting thereon, provided, that such distance back shall in any case be at least ninety (90) feet, and provided further, that in case of unplatted property, the distance back shall be the same distance as that included in the assessment of the platted lands immediately adjacent thereto."

Part two immediately following part one is as follows: "All property included within said limits of such local improvement district shall be considered and held to be the property and to be all the property specially benefited by such local improvement and shall be the property to be assessed to pay the cost and expense thereof or such part thereof as may be chargeable against the property specially benefited by such improvement, which cost and expense shall be assessed upon all of said property so benefited in accordance to the special benefits conferred on such property in proportion to area and distance back from the marginal

line of the street, or other public way or area improved."

Part three provides for the apportionment of the assessment in a manner which was not used in this case and which need not be set out herein.

Part four, which was an amendment of the act adopted in 1937 is as follows: "Any city or town is authorized to apportion the expense of such improvement, in lieu of the method heretofore provided, as follows: Each one-half block or fraction thereof within the district, contiguous to each street, alley, avenue, boulevard or parkway to be improved, shall be divided, irrespective of number and location of lots, into three (3) equal subdivisions parallel to such street, alley, avenue, boulevard or parkway to be improved, which subdivisions shall be numbered one (1), two (2), and three (3) respectively, beginning next to said street, alley, avenue, boulevard or parkway. The total assessment for each half-block or fraction thereof abutting on either side of each such street, alley, avenue, boulevard or parkway to be improved, as fixed by the city council, shall be apportioned as follows:

"Subdivision Number One (1) Sixty per cent (60%)
"Subdivision Number Two (2) Thirty per cent (30%)
"Subdivision Number Three (3) Ten per cent (10%)

"And when so apportioned shall be assessed as the ownership may appear; provided that any fractional lots or irregular shaped tracts to which the above formula does not apply shall be assessed according to area." The streets involved herein run east and west. None of them cross the railway tracks. It seems that very little of the property of the railway company abuts directly on the streets improved. Most of the assessments appear to be under subdivisions 2 and 3, assessable for 30 and 10 per cent respectively as above mentioned.

## 1. SPECIAL ASSESSMENTS AGAINST RAILROAD RIGHT OF WAY.

The main question before us is as to whether or not the naked right of way of the appellant railway company is assessable for the street improvement in this case. There is a diversity of opinion on the subject. That is not surprising. The theory on which such special assessments are upheld is that the property assessed receives an equivalent in value. But that is not at all true in all cases. In fact it is probable that even in the case of private property such equivalent is in many instances at least partially a delusion. The writer, for instance paid special assessments on a lot for a period of thirty years. The more special assessments there were levied against the lot, the more the market value of the lot diminished. He was interested in a street railway company. It went bankrupt partially at least by reason of the heavy paving assessments which it was compelled to pay. To alleviate the situation, the statutes in some states provide that the municipality as a whole must pay for a portion of street improvements. So it is not surprising that the appellant railway company objects to the assessments against it in this case. However, the judicial decisions on legislation authorizing such special assessments have generally become so crystallized that it would seem to be rather late in the day to question their authority. And to be realistic, it may be that it would be substantially impossible to make the extensive street improvements demanded by modern society except through the sacrifice or partial sacrifice of individual property owners, and that such sacrifice, as in the case of the burdensome income taxes of today, must be borne, even though grimly.

Annotations on the subject before us are contained in 37 A.L.R. 219 and subsequent pages and 82 A.L.R.

425 and subsequent pages. After reading numerous cases on the subject, we think we may say, without attempting to include every case on the subject, that there are two main lines of authority on the subject before us. The cases following the first line of authority hold that the right of way of a railroad cannot as a matter of law receive any benefit from local street improvements and cannot accordingly be subject to any special assessments therefor. Philadelphia v. Philadelphia, W. & B. R. Co. (1859), 33 Pa. 41; Mt. Pleasant v. Baltimore & O. R. Co. (1890), 138 Pa. 365, 20 A. 1052, 11 L.R.A. 520; New York & N. H. R. Co. v. New Haven (1875), 42 Conn. 279, 19 Am. Rep. 534; Naugatuck R. Co. v. Waterbury, 78 Conn. 193, 61 A. 474; City of Barre v. Barre & Chelsea R. R. Co., 97 Vt. 398, 123 A. 427, 37 A.L.R. 207; Long Island R. Co. v. Hylan (1925), 240 N. Y. 199, 148 N.E. 189; and see other cases in 37 A.L.R. 250 and 82 A.L.R. 431. It must, however, be said that in these cases there was apparently either a statutory provision that the assessment should be according to the special benefit to the property involved or there was no specific statutory provision on the subject contrary thereto. If in these states the courts were confronted with a statutory provision requiring the assessments of railway property either directly or indirectly, it is not at all clear what these courts would then say upon the subject. See for instance Syracusce B. & N. Y. R. Co. v. Van Amburgh, 223 App. Div. 485, 229 N. Y. S. 10, 15. That case involved a water district. But, of course, it frequently at least happens that a railroad right of way would be no more benefited by improvements in such a district as in case of street improvements. The court said that the weight of authority in this and other jurisdictions is against exemptions as a matter of law. The court further stated the general rule hereafter more fully discussed as follows: "The question as to whether a benefit will arise

is ordinarily one of fact. * * * Spencer v. Merchant, 100 N. Y. 585, 588, 3 N.E. 682, * * * The legislature might have fixed the boundaries of the district and determined what property would be benefited. * * * Had the legislature enacted that the railroad property within the district would be benefited and should be taxed with other property, it would have determined conclusively the question of fact. * * * Spencer v. Merchant, supra."

The second main line of authority holds that a railway right of way is subject to special local assessments the same as any other property. In the very year of 1859, when the Pennsylvania Court in 33 Pa. 41 held as above mentioned, the Ohio Supreme Court in 10 Ohio St. 159, held the exact opposite, saying in part: "If railroad tracks are taxable for general purposes, it is difficult to perceive why they should not be subject also to special taxes or assessments * * * A citizen would scarcely claim exemption, because he had devoted his lot to uses which the improvement could not in any way advance, and we see no good reason why a railroad company should be permitted to do so." 48 Am. Jur. § 104, p. 652, 653, says on the subject as follows: "The property of a railroad or of a street railway is, in a considerable degree, its right of way over private land or its right of way or occupancy on highways and streets, and the peculiar character of such right of way gives rise to difficulty in the application of special or local assessments against it. There is some conflict of opinion as to whether such a railroad or street railway right of way is subject to special or local assessment. The great weight of authority is to the effect that a railroad right of way may be subjected to a special or local assessment, without violating the interstate commerce clause, the Fourteenth Amendment, or other constitutional provision or right, even though the railroad performs the role of a public high-

way, even though such an assessment cannot be enforced by a sale of the property, and although no other way is provided for its collection."

In Baltimore & O. R. Co. v. Oak Hill, 25 Ohio App. 301, 315, 157 N.E. 817, the court said: "In some jurisdictions it has been held that the right of way of a railroad is not subject to assessment for the improvement of an abutting street, on the theory that no benefit can accrue to the railroad right of way by virtue of such improvement. In other jurisdictions a railroad right of way is held exempt for other reasons. But the general rule is that a railroad right of way, whether owned in fee or held by easement, is liable for such assessments as other property is." In the case of Ocean Beach Hotel Co. v. Town of Atlantic Beach, 147 Fla. 445, 2 So. (2d) 879, 883, the court stated as follows: "It is on the theory that a railway contiguous to a proposed street improvement has been, in almost all the American jurisdictions, held subject to imposition of special benefit assessments for its proportion of the cost of constructing special street improvements, since it is recognized that a line of railroad serving a municipality whose population will likely be enlarged, and whose volume of business may be increased through such improvements, will necessarily receive an indirect benefit through enhancement in the value of its line in that locality, although the direct benefit to the immediate contiguous property itself may be comparatively small." In the case of Mackey v. Choctaw, O. & G. R. Co. 261 F. 342, 343 (8th Circuit of Appeals), the court stated: "It is settled that a railroad right of way is subject to general taxation, even one granted by Congress over an Indian reservation * * * and there is no such difference in principle between a general tax and a special assessment which proceeds on the theory of a direct and special benefit, that makes for a different conclusion. The general rule, sustained by the weight

of authority, is that a railroad right of way, whether owned in fee or held in easement, is real estate, property, or ground which may be subjected to assessment for the cost of local improvements." The Colorado Supreme Court in Post Printing & Publishing Co. v. City & County of Denver, 68 Colo. 51, 189 P. 39, 42, stated in regard to such an assessment as follows: "* * * it appears that upon the question of the right, in any case, to assess railroad property for benefits, but few of the cases commonly cited against the right are strictly in point. Upon the right itself, we are of the opinion that a majority of the cases are in favor of its existence. We are further of the opinion that the reasoning in favor of such right is more persuasive than that to the contrary." That, too, is the holding in Sterling Nat. Bank & Trust Co. v. Charleston Transit Co., 126 W. Va. 42, 27 S.E. (2d) 256, and Herman Construction Company v. Wabash Railroad Company, 206 Mo. 172, 104 S.W. 67, 12 L.R.A. (N.S) 112. In the case of Peru and Indianapolis Railroad Co. v. Hanna, 68 Ind. 562, 567, the court stated: "The first point made by appellant's counsel is, that the strip of ground in controversy is not assessable for street improvements, because the railroad track is itself a public highway. We can not concur in this view, but are of opinion that the track of a railroad company, when it borders on a street, is properly assessable for its due proportion of the cost of the improvement of such street under an ordinance of the city." See for further cases holding the same view 37 A.L.R. 255, 82 A.L.R. 432, 433, and see also the late case of Chicago & N. W. Ry. Co. v. City of Omaha, 154 Neb. 442, 48 N.W. (2d) 409.

We have heretofore set out our statute on the subject before us. It does not specifically provide that a railway right of way may be assessed, so it is urged that we should adopt the view of the former Michigan, Wisconsin and Iowa cases (37 A.L.R. 251) which held that

a right of way is not assessable in the absence of a statute directly so providing. But these decisions were repudiated by the legislatures of the several states, and that before the adoption of our own statute on the subject, so that it would seem to be rather anomalous that we should interpolate into our state a provision repudiated by these legislatures. Moreover we heretofore, in the case of two different lines of authority, preferred to adopt the line which was in accord with modern legislation. Jones Trucking Co. v. Superior Oil Company, 68 Wyo. 384, 234 P. (2d) 802. And to do that would seem to be rather appropriate in a case involving the power of taxation and the levy of special assessments, which is a legislative power. Furthermore what counsel ask us to do is contrary to most of the authorities. As stated by Judge Phillips in Town of Clayton v. Colorado & S. Ry Co., 51 F. (2d) 977, if the legislature had intended to exclude railway property from the requirements of the statute, the legislature could have easily so provided. An annotation in 37 A.L.R. 228 states: "It is generally held, however, that authority for assessing a railroad right of way exists by virtue of statutory provisions authorizing the levying of assessments for local improvements on 'owners of land,' 'lots or parcels of land,' 'pieces of land,' 'lands or property,' etc., benefited by or abutting on the proposed improvements, without the necessity of there being specific mention of assessing railroad property or roadbeds." Cases from eight jurisdictions are cited. See also many cases cited in Page and Jones, Taxation by Assessment, § 594, p. 980, note 2, Elliott on Railroads (3rd Ed.), § 950, p. 358, note 25, Chicago & N. W. Ry Co. v. City of Omaha supra, and in addition the case of Post Printing & Publishing Co. v. City and County of Denver, 68 Colo. 50, 189 P. 39, holding that for the Union Pacific Railroad Company to claim that its property was not liable for special assessment when not specifically men-

tioned in the statute, would be to reverse the settled rule to the effect that taxation is the rule and exemption the exception.

It does not necessarily follow under the second main line of authorities above mentioned that a railroad right of way is always subject to assessment for street improvement. See full discussion in Chicago & N. W. Ry Co. v. City of Omaha, supra. The cases on the subject may for practical purposes be divided into two general classes, namely, (a) cases in which the legislature (or, as many cases seem to hold, its duly authorized agent) has provided specifically what property shall be assessed for and has been benefited by local improvements, and (b) cases in which no such provision has been made but where the assessments must expressly or impliedly be made according to special benefits conferred. In the latter class of cases, there must be a benefit affirmatively conferred upon the railroad property assessed, a question upon which the railroad is entitled to be heard. City of Grand Rapids v. Grand Trunk Ry. System, 214 Mich. 1, 182 N.W. 424, 14 McQuillin, Municipal Corporations (3rd Ed.), § 38.42, Page and Jones, Taxation by Assessment § 594, note 3, p. 980, Chicago & N. W. Ry Co. v. City of Omaha, supra. Counsel for the city argue that a benefit is presumed, and the burden to show otherwise is on the railway company, citing 63 C.J.S. § 1448, p. 1235 and § 1449, p. 1236. That seems to be the holding in most cases, 37 A.L.R. 226. The presumption does not seem to exist in all cases, as appears from Maryland & P. R. Co. v. Nice, 185 Md. 429, 45 A. (2d) 109, 111, where the court stated: "* * * the decisions are not harmonious as to whether the right of way and roadbed of a railroad are subject to special assessments. Such property is generally the same under all circumstances and cannot derive any special benefit from local improvements. * * * The prevailing view, however, is that

the court cannot say as a matter of law that the right of way of a railroad may not be benefited or susceptible of benefit by local improvements, and we accordingly hold that a right of way is subject to assessment for improvements if specially benefited thereby. As some special benefit to abutting property is the basis for the assessment, such benefit for railroad use must be established as a fact before the assessment can be sustained." And that seems to be the view of the Illinois court in City of Chicago v. Chicago & N. W. Ry Co., 278 Ill. 86, 115 N.E. 836. We need not decide the point, for we are here dealing, we think, with cases which fall under class (a) above mentioned.

We shall accordingly proceed to consider cases falling under that class, namely, where the legislature has made specific provisions as to what property shall be assessed as benefited. And before considering other cases, it is of interest to consider the decisions in Illinois. In the annotation in 37 A.L.R. 250, many Illinois cases are cited in which it was held that no part of the cost of street improvement can be assessed against a railway right of way. Among these is City of Chicago v. Chicago & N. W. Ry Co., supra, (p. 837), where the court stated: "While there may be conditions under which a railroad right of way is benefited and can be assessed for a local improvement, as a general rule such a local improvement as a pavement is of no benefit to a right of way." On the other hand a number of Illinois cases are cited in 37 A.L.R. 255, holding that a railroad right of way may be assessed for part of the cost of street improvements. We find that the difference in these holdings is based on the difference in legislation in Illinois.

Under Section 117, art. IX, p. 232, of the revised statutes of Illinois 1874, it was provided: "When any such city or village shall, by ordinance, provide for the

making of any local improvement, it shall, by the same ordinance, prescribe whether the same shall be made by special assessment or by special taxation of contiguous property, or general taxation, or both." Section 132, page 234, of the same statute, provides:

"When said ordinance under which said local improvement shall be ordered shall provide that such improvement shall be made by special taxation of contiguous property, the same shall be levied, assessed and collected in the way provided in the sections of this act providing for the mode of making, levying, assessing and collecting special assessments."

The Supreme Court of Illinois in the case of Chicago & N. W. Ry Co. v. Village of Elmhurst, 165 Ill. 148, 151, decided in 1896, stated as following in reference to the statute just quoted: "We have held over and over again, that, under the statute in pursuance of which the present tax was levied, the determination of the common council is final upon the question of benefits, and that the land owner 'cannot go behind the action of the city council imposing the tax and inquire what benefit, if any, the property owners received on account of the improvement.'" (citing cases). The statute was amended by the laws of Illinois of 1895, p. 100, and contains the following proviso: "Provided, that no special tax shall be levied or assessed upon any property to pay for any local improvement, in an amount in excess of the special benefit which such property shall receive from such improvement. Such ordinance shall not be deemed conclusive of such benefit, but the question of such benefit and of the amount of such special tax shall be subject to the review and determination of the county court, and be tried in the same manner as in proceedings by special assessments." Since the time of the amendment the rule in Illinois is as first above mentioned but it is clear that under a statute such as ours the holding would be otherwise. The original

law of Illinois above mentioned did not specifically provide that the city authority should have the right to determine what property was benefited and should be assessed, and was less specific in that connection than our statute.

When the legislature provides that special assessments for street improvements shall be made according to the front foot rule, it evidently has determined what property has been benefited, and the cases in that connection will illustrate class (a) hereintofore mentioned by us. The leading case on that subject, in so far as it bears on the case at bar, is the case of Northern Indiana R. R. Co. v. Connelly, 10 Ohio State 159, 165, 166, decided in 1859, in which railroad property abutting on a street was assessed in proportion to the feet fronting upon the street improved, according to legislation on the subject, which provided that the property abutting might be assessed in proportion to the feet front, or according to valuation. The council adopted the former method. The court said in part: "But it is said that assessments, as distinguished from general taxation, rest solely upon the idea of equivalents, a compensation proportioned to the special benefits derived from the improvement, and that in the case at bar, the railroad company is not, and in the nature of things can not be, in any degree, benefited by the improvement. It is quite true that the right to impose such special taxes, is based upon a presumed equivalent; but it by no means follows that there must be in fact such full equivalent in every instance, or that its absence will render the assessment invalid. The rule of apportionment, whether by the front foot or a percentage upon the assessed valuation, must be uniform, affecting all the owners and all the property abutting on the street alike * * * It is manifest that the actual benefits resulting from the improvement, may be as various almost as the number of owners and the uses to which the

property may be applied. No general rule, therefore, could be laid down which would do equal and exact justice to all. The legislature have not attempted so vain a thing, but have prescribed two different modes in which the assessment may be made, and left the city authorities free to adopt either. The mode adopted by the council becomes the statutory equivalent for the benefits conferred, although in fact the burden imposed may greatly preponderate. In such case, if no fraud intervenes, and the assessment does not substantially exhaust the owner's interest in the land, his remedy would seem to be to procure, by a timely appeal to the city authorities, a reduction of the special assessment and its imposition, in whole or in part, upon the public at large."

So in City of Kinston v. Atlantic & N. C. R. Co., 183 N. C. 14, 110 S.E. 645, 647, it appears that the legislature authorized the city to pave streets, and assess certain amounts against abutting property. Assessments were levied against abutting railroad property. That was upheld, the court saying in part: "And these and other decisions on the subject here and elsewhere are to the effect further, both as to railroads and other abutting owners, that the legislative declaration on the subject is conclusive as to necessity and benefit of the proposed improvements, and in applying the principle and estimating the amount as against the owners, individual or corporate, the court may interfere only in case of palpable and gross abuse." So in the case of Louisville & N. R. Co. v. Southern Roads Co., 217 Ky. 575, 584, 585; 290 S.W. 320, railroad property was assessed according to the front foot rule as authorized by the legislature. The court in upholding the assessment said in part: "It appears from the pleadings that, by the resolution of necessity by the ordinance providing for the work, and by the ordinance accepting the work and apportioning the cost against the property of

the appellant, the legislative body, authorized to have this work done, determined that the property of the appellant was benefited. In Branson v. Bush, 251 U. S. 182, 40 S. Ct. 113, 64 L. Ed. 215, the Supreme Court, in discussing the law applicable to a like situation, * * * declared the rule to be that the legislative determination as to what lands within a local improvement district will be benefited by an improvement is conclusive upon the owners and the courts, and can be assailed under the Fourteenth Amendment to the federal Constitution only where the legislative action is arbitrary, wholly unwarranted, a flagrant abuse, and by reason of its arbitrary character a confiscation of particular property. Though appellant's answer does aver that the improvement of Railroad street results in no benefit to its property, the answer also pleads all the legislative proceedings providing for this improvement, and which we have noted above. The legislative determination is conclusive that appellant's land is benefited unless appellant can show that this legislative action was wholly arbitrary, wholly unwarranted and flagrant abuse of power. The averments of the answer fail to make out such a state of case. It is true appellant alleges that its right of way, 90 feet in width, is now being used exclusively as a right of way for its trains, and that the improvement of Railroad street does not add to the value of its land as a right of way. But this position was fully exposed in the case of L. & N. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819."

In the case of Missouri, K. & T. Ry Co. v. City of Tulsa, 45 Okla. 382, 145 P. 398, 401, 403, the court described the law relating to special assessments as follows: "The charter provides that the board of commissioners shall have the power to assess the whole cost of this construction against the owners of the property abutting upon the street improved who are

specially benefited thereby, and in apportioning the cost of such improvement each quarter block shall be charged with its proportion of paving both of the front and side streets of each block, together with the area formed by street intersections, etc., which cost shall be apportioned among the lots or subdivisions of such quarter blocks according to the benefit of each lot or parcel. In other words, the charter means that, for the purpose of taxing for improving Cameron street, the taxing district shall include all the property between lines drawn parallel with that street and back from it one-half block on each side." It will thus be seen that the mode of special assessments was similar to that in this state. Objections were made that certain lots were not benefited. But they were within the assessment district, and so, said the court, they presumably were benefited. The court said further: "Whether they are in fact so benefited we cannot say, for the reason that the same is a legislative question which, having been settled by the legislative power of the city, is conclusive on us."

In the case of Branson v. Bush, 251 U. S. 182, 40 S. Ct. 113, 115, 64 L. Ed. 215, referred to in the Kentucky case above mentioned, the legislative authority for special assessments of property is stated as follows: " 'Sec. 5. It is ascertained and hereby declared that all real property within said district, including railroads and tramroads, will be benefited by the building of the said highway more than the cost thereof as appropriated in the county assessment of each piece of property within the district, for this and the succeeding years, and the cost thereof is made a charge upon such real property superior to all other mortgages and liens except the liens for the ordinary taxes, and for improvement districts heretofore organized.' " It may be noted that in this legislation, railroads were specifically mentioned. However, as heretofore fully shown, whether

mentioned or not, railroads would be included under the general terms used in the statute. It will accordingly be noted that the legislation in that case was very similar to the legislation in this state. The court upheld the assessments against the railroad stating as follows:

"Where, in laws creating districts for local improvements and taxation, there is such a legislative declaration as this, as to what lands within the district will be benefited by the improvement, the law with respect to the extent to which such determination may be reviewed by the courts is so well settled, and has so lately been re-examined and restated by this court, that extended discussion of the subject is not justified.

"In Spencer v. Merchant, 125 U. S. 345, 8 S. Ct. 921, 31 L. Ed. 763—a decision often cited and approved—it is decided that if the proposed improvement is one which the state had authority to make and pay for by assessments on property benefited, the Legislature, in the exercise of the taxing power, has authority to determine, by the statute imposing the tax, what lands, which might be benefited by the improvement, are in fact benefited by it; and if it does so, its determination is conclusive upon the owners and the courts, and the owners have no right to be heard on the question whether their lands have been benefited or not."

A case very closely in point herein is Heman Construction Co. v. Wabash R. Co., 206 Mo. 172, 177, 178, 180, 181, 188; 104 S.W. 67, 12 L.R.A. (N.S.) 112. In that case the legislation involved provided that one-fourth of the cost of the improvement should be levied and assessed " 'upon all the property fronting upon or adjoining the improvements, in the proportion that the frontage of each lot so fronting or adjoining bears to the total aggregate of frontage of all lots or parcels * * * and the remaining three-fourths of the cost so ascertained shall be levied and assessed as a special tax

upon all the property in the district * * * All of the property in the lots, blocks or tracts of land lying between the streets to be improved and the district lines established as above specified, shall constitute the district aforesaid.'" The court said in part: "Where words of general description are used in reference to taxation, such as 'all property,' they include everything of that kind not expressly, or by necessary implication, excepted. * * * So that there can be no doubt that the words, 'all property,' as used in the city charter, include all railroad property; and railroad rights of way being private rail property, they are, unless specially exempted, subject to assessment for local improvements * * * The ordinance having expressly imposed the burden upon 'all property' in the district specially benefited by the improvement, without exempting any, the question is whether an exemption ought to be implied by the courts in favor of the railroad right of way. We think not. Our conclusion is that, according to the decided weight of authority and the better reason, the right of way of the defendant was properly assessed for local improvements." The holding in this case was reaffirmed in Gilsonite Const. Co. v. St. Louis, I. M. & S. Ry Co., 240 Mo. 650 144 S.W. 1086.

The case closest in point herein is Northern Pac. Ry. Co. v. City of Seattle, 46 Wash. 674, 91 P. 244, 246, 248, 12 L.R.A. (N.S.) 121. That case involved the charter of the city of Seattle, which among other provisions had the following: "'Unless otherwise provided in such ordinance such district shall include all the property between the termini of said improvement, abutting upon, adjacent or proximate to the street, lane, alley, place or square proposed to be improved to a distance back from the marginal line thereof one hundred twenty (120) feet, and all property included within said limits of such local improvement district shall be considered and held to have a frontage upon such im-

provement, and shall be the property specially benefited by such local improvement, and shall be the property assessed to pay the cost and expense thereof, or such proportion thereof as may be chargeable against the property specially benefited by such improvement, which cost and expense shall be assessed upon all of said property so benefited, in proportion to the frontage thereof upon such improvement.' " The provision is so closely similar to, nay almost identical with, the second part of § 29-2019 W.C.S. 1945 that the similarity or identity can hardly be said to be coincidental. We rather think that our statute closely followed the wording of the charter of Seattle. The court considered the subject of assessment against the railroad property by a careful opinion and upheld the assessment made against the railroad right of way. It quoted and approved what was said in City of Ludlow v. Trustees of the Cincinnati So. Ry., 78 Ky. 357, as follows: " 'While assessments of this character, as distinguished from general taxation, rest upon the basis of benefits or presumable benefits to the property assessed, it is not essential to their validity that actual enhancement in value, or other benefit to the owner, shall be shown. The passage of the ordinance by the city council, under the power granted in the charter, is conclusive of the propriety of the improvement, and of the question of benefit to the owners of abutting property. Northern Indiana R. R. Co. v. Connelly, 10 Ohio St. 164. Absolute equality in the distribution of such burdens cannot be attained. An approximation to equality is all that is possible, but in reaching this point the present or prospective use of the property cannot enter into the calculation.' "

It is contended by appellant that section 29-2002 W.C.S. 1945, heretofore set out must be construed in connection with section 29- 2019; that the former section provides that assessments must be according to

special benefits conferred, and is, accordingly, controlling in that regard. We see nothing inconsistent between the two sections unless it be the clause contained in the former section reading "and to determine what lots, parts of lots, and parcels of land are specially benefited by such improvements." That clause seems to give the council an extensive power, much more specific than the power granted to cities under the Illinois statute of 1874 heretofore discussed. And inasmuch as the legislature is able to delegate its power to the municipal council, and the latter's action is also legislative, its determination as to what property is benefited might be just as controlling as the provisions of section 29-2019, supra, if the latter section had not been enacted. But see Syracuse B. & N. Y. R. Co. v. Van Amburgh, 223 App. Div. 485, 229 N. Y. S. 10, where the court held that when the benefits are determined by city authorities, the question is judicial. We need not determine that. Possibly the clause refers only to the details in connection with the assessments to be made. In any event we cannot see how the former section can be said to control the latter section which is specific and directly to the point as to special benefits conferred. There are expressions in Bass v. City of Casper, 28 Wyo. 387, 205 P. 1008, 208 P. 439, which recognize the rule that an assessment should not exceed the benefits conferred. And that is true, and it cannot be anything but a misfortune when the rule is violated. But that case does not dispose of the precise question involved in the case at bar.

Similar to the Missouri and Washington statutes, our legislature has, by the second part of section 29-2019, supra, specifically provided that all the property in the district shall be considered as benefited, and shall be assessed according to the area and distance back of the line of the street. Even the percentage of the amount of assessment according to the distance from the street

is fixed by the fourth part of the section. We do not see how the statute could be more specific. The rule provided is a modification of the front foot rule and in most cases is probably more just than the latter. It might perhaps be possible that the boundaries of the district would be fixed in such a way as to be unfair to the railroad company. Upon examining the maps in this case, we find no such unfairness. For a case such as that before us, the rule applies that when the legislature (or its duly delegated agent for that purpose as stated supra), determines what property is benefited and shall be assessed, such determination is well nigh conclusive. That is a rule of almost universal application, as announced in numerous authorities, aside from those already mentioned.

In the comparatively late case of Ocean Beach Hotel Co. v. Town of Atlantic Beach, 147 Fla. 445, 2 So. (2d) 879, 883, the court stated: "And the power to determine whether or not the property assessed to pay the cost of a local improvement is benefited by such improvement, is legislative, not judicial."

And in the late case of Northern Pac. Ry Co. v. Lutey, 104 Mont. 321, 66 P. (2d) 785, 786, the court said: "The rule is well established that the question of determining the area benefited by an improvement is a legislative function, and such legislative determination, unless palpably unjust, is usually conclusive * * * except in cases of fraud or manifest mistake. * * * The city council's determination, pursuant to legislative authority, of the property benefited, in the absence of fraud or manifest mistake, is conclusive."

In 25 R.C.L. § 57, p. 139, 140, it is stated: "According to the rule supported by numerous decisions the question of special benefit is a question of fact, and the legislature has the general power to determine, by statute what lands which might be benefited by the

improvement are in fact benefited; and if it does so its determination is conclusive upon the owners and the courts. This is based upon the theory that the legislative body has considered all facts bearing upon the question, and has reached the conclusion that such property is specially benefited to the extent of the assessment, and has embodied its determination and judgment in the legislative act."

In Spencer v. Merchant, 100 N. Y. 585, 587, 3 N.E. 682, the court said: "The act of 1881 determines absolutely and conclusively the amount of tax to be raised, and the property to be assessed and upon which it is to be apportioned. Each of these things was within the power of the legislature whose action cannot be reviewed in the courts upon the ground that it acted unjustly or without appropriate and adequate reason * * * The legislature may commit the ascertainment of the sum to be raised and of the benefited district to commissioners, but is not bound to do so, and may settle both questions for itself; and when it does so its action is necessarily conclusive and beyond review."

The case was appealed to the Supreme Court of the United States, 125 U. S. 345, 355, 356; 8 S. Ct. 921; 31 U. S. (L.Ed.) 763. In that case, the United States Supreme Court said as follows: "The power to tax belongs exclusively to the legislative branch of the government. U. S. v. New Orleans, 98 U. S. 381, 392; Meriwether v. Garrett, 102 U. S. 472. In the words of Chief Justice Chase, condensing what had been said long before by Chief Justice Marshal, 'The judicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons; but the responsibility of the legislature is not to the courts, but to the people, by whom its members are elected' * * * The legislature in the exer-

cise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading, or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion. * * * the legislature has the power to determine, by the statute imposing the tax, what lands, which might be benefited by the improvement, are in fact benefited; and if it does so, its determination is conclusive upon the owners and the courts, and the owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment, and its apportionment among the different parcels of the class which the legislature has conclusively determined to be benefited."

In the later case of Fallbrook Irrigation District v. Bradley 164 U. S. 112, 17 S. Ct. 56, 69, 41 L. Ed. 369, the court stated: "The legislature, when it fixes the district itself, is supposed to have made proper inquiry, and to have finally and conclusively determined the fact of benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question."

In King v. City of Portland, 38 Ore. 402, 63 P. 2, 4, 9, the court said among other things: "It is asserted with substantial unanimity and great clearness by the courts in this country, as well as by text writers of erudition and learning, that, unless the nature of the case precludes it, the power to determine the confines of a taxing district for any particular burden is purely one of legislative discretion, and that the question of benefits accruing by reason of improvements contemplated is regarded as one of fact, which the legislature is always presumed to have considered and settled by the enact-

ment. * * * As the writers say, the authority of the legislature in these respects is almost without limit; yet that there is a limit beyond which it cannot go, all will concede. When, however, it has exercised its legislative discretion, and prescribed a district and adopted a method, it ought to be plain and indisputable that it has exceeded its constitutional authority, before the court should undertake to set at naught its declared will."

In note 2, Cooley's Constitutional Limitations, Eighth Edition, p. 1072, it is said: "The legislative determination that certain land is benefited is conclusive and it cannot be assailed under the Fourteenth Amendment to the Federal Constitution unless it is wholly unwarranted and a flagrant abuse, and by reason of its arbitrary character is mere confiscation of the particular property." Many cases are cited. See also 48 Am. Jur., § 187, p. 721, where it is said: "The rule of limitation of judicial review and relief to arbitrariness, unreasonableness, and abuse of power by the legislature or assessing authority, or to fraud, bad faith, and mistake, applies fully with respect to inclusion of railroads or street railways within improvement districts or areas and to special assessments levied on them. A court may not say as a matter of law that the right of way may not be benefited or susceptible of benefit by a local improvement." See also notes 37 A.L.R. 226, 82 A.L.R. 428, 63 C.J.S. 1139, 14 McQuillin (3rd Edition), section 38.56.

It may be that under the foregoing rule the courts have gone a long way in permitting the making of modern improvements at the sacrifice, in many cases, of the individual property owners. However, values and benefits are matters of opinion, and it may be that since the taxing power is legislative, the legislature's opinion is as good as any, or better. It is a question of striking

a proper balance between the legislative department and the judicial. In any event the rule has become fixed, and it is too late to expect us to overrule it. Relief must be sought at the hands of the legislature. No fraud is shown herein. We cannot say, under the authorities heretofore cited, that our statute is so arbitrary or palpably unjust as to require the judicial department to declare the act of the legislature void. Appellant's offered testimony that the property was not benefited is of no avail against the determination of the legislature to the contrary. It could be heard only on the question of proper apportionment according to the rule provided by our statute. That apportionment is not questioned. Its contentions herein on the point here considered must accordingly be overruled.

## 2. DESCRIPTION OF PROPERTY.

It is stated in 48 Am. Jur. § 144, p. 687, as follows: "The land on which the assessment is levied should be described with reasonable certainty. Thus, an assessment on land for a street improvement must describe the lots assessed so that they can be identified, or a sale under such assessment will be void, and merely stating the number of front footage is not a sufficient description."

In Pennsylvania Co. v. Cole, 132 F. 668, the court held that a description of property in proceedings for the assessment of a special tax thereon for street improvements must be such as would enable the officers to make a valid conveyance of the property in case of its sale. Evidence aliunde cannot be resorted to for the purpose of rendering the description certain, nor can it be reformed as in case of a private contract or conveyance.

In 63 C.J.S. § 1440, p. 1229, it is said: "Aside from any statutory provisions on the subject, it is a rule of

general application that the property must be properly and correctly described with such reasonable certainty that it may be readily located and identified by some lawful mode, such as a survey, or by metes and bounds; and unless it is so described as to be capable of such identification the assessment will be void."

In the case of Felker v. Board of Com'rs of Paving Imp. Dist. No. 13, 202 Ark. 304, 150 S.W. (2d) 55, 58, the court said: "We agree that in assessing benefits to land in improvement districts the assessments are made against the lands and not against the owner thereof. That being the case, the description is essential and must be a correct description. The description must be such as 'will fully apprise the owner without recourse to his superior knowledge peculiar to him as owner, that the particular tract of land is sought to be charged with a tax lien. It must be such as will notify the public what lands are to be offered for sale in case the tax be not paid.' Brinkley v. Halliburton, 129 Ark. 334, 196 S.W. 118, 1 A.L.R. 1225, and Buckner v. Sugg, 79 Ark. 442, 96 S.W. 184. Other cases might be cited to the same effect, but it is unnecessary as the courts are unanimous in the opinion that no lien is created by reason of an assessment of taxes against property unless the description is accurate and correct on the assessment books. The reason of course is that the proceeding is one in rem against the land and not in personam, against the owner thereof."

Counsel for the city contend that appellant has not been prejudiced by the manner in which assessments against its property were made. But it is not a question of prejudice to the party but a question of identification. The city attempted to assess five different tracts of land supposedly owned by the railroad company. One of these tracts was assessed for $425.88 and is described: "Area in R.R Row adjacent to N. Broad-

way Addition." The term adjacent ordinarily means a little distance away from the property mentioned, although in some cases it might include the term "adjoining." Aside from that it does not state the extent of the assessment. It does not appear whether the tracts assessed consist of a strip of 10 feet wid eby 50 feet long, whether it consists of a square of 50 feet, whether it consists of a half block or an acre of land. The conveyance of a tract of land in terms mentioned in the assessment roll would be so indefinite as to convey nothing and the assessment in that respect is accordingly wholly void.

In other cases assessments were attempted to be made against appellant on lots which were not in existence, and again in other cases on lots which were owned by other parties. The railroad company owns no lots as shown by the plats of the city of Riverton or of any additions thereto. For instance an assessment was made of $76.09 against the Chicago & North Western Railway Company as owning lot 4 in block 6. No lot 4 is in existence and was created through the imagination of the engineer who compiled the assessment roll. So too lots 2 and 9 of block 8 do not exist.

In the case of People ex rel v. Chicago and Alton Railroad Co., 96 Ill. 369, 370, a collector of taxes asked for a judgment against lot 15. The court said: "If there was no such property as lot 15 mentioned in the application, in existence, then it is clear the court did right in refusing judgment, because a judgment for taxes cannot be rendered against property which has no existence. Property must be described by reference to government surveys, or by metes and bounds, or, if it is divided into lots, then by reference to authenticated plats. If described by some one of these modes, then it can be ascertained and its locality easily determined. But, if a certain piece of property is desig-

nated as a lot, when there is no plat to which reference can be had to determine from what tract of land the lot has been formed, it would be impossible to locate the lot." That is directly applicable to the assessment made as above mentioned. In other cases as stated before, the lots or part of lots for which the railway company was assessed were owned by parties other than the railway company, and in case of foreclosure could not possibly reach the property of the railway company. In these cases, the engineer "extended" the lots owned by private parties in order to reach the property of the railway company. But such extension existed only in the mind of the engineer and not in fact. Even the "extension" was not mentioned in the assessment roll. We think, accordingly, that the whole assessment against the railway company herein is totally void and must be set aside.

Counsel for the city contend that the objections filed in this case were not sufficient and that the railroad company should have appeared in person to make objections and do so more specifically than was done in the written objections filed. We see no merit in that objection. In the court below, counsel for the city asked that it be allowed the sum of $350 as attorney fees in connection with defending the assessment that was made. Section 29-2022, p. 698, W.C.S. 1945, provides that an appellant in a case of a special assessment should give a bond "conditioned to prosecute such appeal without delay and, if unsuccessful, to pay all costs to which the city is put by reason of such appeal." The trial court disallowed the attorney fees and counsel think that this court should make that allowance. There are several answers to that. First, no appeal was taken from the order of the district court in this connection. Second, the railroad company has not been unsuccessful. Third, if an appellant is mulcted in heavy attorney fees in case of an appeal from the order of the city

council, it would, of course discourage any and all appeals. That would be to the good in so far as frivolous appeals are concerned, but it would also discourage any appeal no matter how invalid the proceedings of the council might be, and in such a case it would have a tendency to make the council careless and even to act recklessly and oppressively in connection with assessments to be made. So we doubt that this court should make an allowance for attorney fees on the theory that it is included in the term "cost," which ordinarily, of course, is not true.

The judgment of the district court is accordingly set aside and held for naught in so far as hereinabove mentioned. And the case is remanded to the district court with direction to set the assessments against the railroad company aside for the reason above mentioned, and for such further action by the city council of Riverton as may be lawful under the statutes of this state. RINER, J., and ILSLEY, J., concur.

## ON PETITION FOR REHEARING

(No. 2553; August 29th, 1952; 247 Pac. (2d) 660)

120

## OPINION ON PETITION FOR REHEARING

BLUME, Chief Justice.

A petition for rehearing has been filed in this case. We held that appellant's right of way is assessable for the street improvements in question to be made in the city of Riverton, and that according to area and the percentage fixed in the fourth part of section 29-2019 Wyo. Comp. St. 1945. The decision must not be taken as representing the view of fairness on the part of the members of this court. We based the decision on our statute. We fully realize that nowadays trucks, busses and airlines take away a good deal of the business that would otherwise go to railways. If our decision had been based on a former decision of this court, without reference to any statute, it may well be that we should have overruled such former decision, or modified it in

accordance with the rule often announced by this court that when the reason of a rule ceases, the rule itself should cease. And there is no doubt that the legislature, too, should in all justice follow that rule and should revise the statute in accordance with present day conditions. But it is a separate department of our government and it is fully recognized that the judicial department will not interfere with the legislative department except in cases in which the statute in question is clearly unconstitutional.

The petition for rehearing is accompanied by a brief of 60 pages. We have read it with care. We heretofore made an exhaustive examination of the subject before us setting forth our view in an opinion some thirty pages long. We should not be expected to write another long opinion, or specifically mention the various matters set forth in appellant's present brief. Counsel for appellant admit that at least some of the cases cited in our original opinion sustain our decision in this case, but believe that these cases are not sustained by the weight of authority. We still think that the great weight of authority is that, generally speaking, a railroad right of way is subject to special assessments for street improvements the same as other property. We have not held—as counsel seem to think we did—that it is subject to all special assessments. Many situations might arise in which it would be palpably unjust and arbitrary to subject a right of way to such special assessments. An interesting case on this phase of the subject is Atlantic Coast Line R. R. Co. v. City of Winter Haven, 112 Fla. 807, 151 So. 321. We have limited and do limit our decision strictly to the facts existing in this case.

Whether or not the question of benefit, and the extent thereof, is a judicial question—in which case the owner may challenge an assessment on the ground of

lack of benefit—or a legislative one, depends on the statute. It may be conceded for the purpose of this case that in most jurisdictions the question is a judicial one, as counsel claim. We think that in the present case it is a legislative one. Counsel say that the cases cited by us which involve the constitutionality of statutes on this subject are not in point, but that only the construction of our statute is in question. Strictly speaking that may be correct, but the cases involved statutes in which the legislature determined what property was benefited, and hence are at least illustrative of the subject before us. See also our comment below. Let us examine our statutory provisions somewhat more closely than we did in our original opinion.

Under the provisions of section 29-2002 Wyo. Comp. St. 1945, the city council is given the power to levy assessments upon lands specially benefited by an improvement, *"and to determine what lots, parts of lots, and parcels of land are specially benefited by such improvements, * * *."* The city council in this case made such determination by creating an improvement district and making the assessments in question herein. The case accordingly falls squarely within the decision in the case of Northern Indiana R. R. Co. v. Connelly, 10 Ohio St. 159, and similar cases. However, our legislature was not content with leaving the matter solely in the hands of the council, but for some reason thought that it should itself put the matter beyond question of doubt, and provided by section 29-2019 Wyo. Comp. St. 1945: "All property included within said limits of such local improvement district *shall* be considered * * * the property specially benefited by such local improvement and shall be the property to be assessed to pay the cost and expense thereof * * * in proportion to area and distance back from the marginal line of the street * * *." Here *all* the property within the district *shall* be considered benefited. How can this court, without declar-

ing the statute unconstitutional, construe this statute to mean that the judiciary has the power, after testimony introduced, to determine the exact contrary and fly squarely in the face of the apparently mandatory provision of the statute? The fourth part of the same section provides for the extent of the benefit. We have not discovered any statute exactly like it. It is provided that the assessments shall extend to the distance of half a block, and that in the proportion of 60, 30 and 10 per cent according to the distance back from the street. The statute further provides as follows: "* * * provided that any fractional lots or irregular shaped tracts to which the above formula does not apply *shall* be assessed according to area." The right of way of appellant comes within that proviso. Here are no qualifications whatever. The irregular tracts *shall* be assessed according to the area thereof, and evidently, according to the percentage mentioned previously, depending on the distance back from the marginal lines of the street. That seemingly was done. And the legislature was not even satisfied with these apparently mandatory provisions, and to leave as little loophole as possible to the property owner provided by section 29-2060 Wyo. Comp. St. 1945 as follows: "The action and decision of the council as to all matters passed upon by it in relation to any action, matter or thing provided in this Act * * * shall be final and conclusive in the absence of fraud." We shall refrain from deciding the extent of the meaning of this apparently drastic provision of this statute. Suffice it to say that it would seem to be clear that we must either uphold the assessment herein against the right of way of appellant, or declare the statute unconstitutional. We see no other alternative, no matter what may be our view as to the justice of the assessment. We naturally hesitate to say, especially in view of the numerous authorities heretofore cited, that the proposed assessment is so arbitrary and palpably

unjust so as to warrant us in holding that the legislature has gone beyond the limit of its power.

Counsel for appellant say that our holding is inconsistent with the provisions of section 29-2022 Wyo. Comp. St. 1945, authorizing the court to confirm, correct, modify or annul the assessment. But that we think relates to matters other than that of benefit or no benefit. There are a number of such matters pointed out in the case of Northern Pac. Ry Co. v. City of Seattle, 46 Wash. 674, 91 P. 244, 12 L.R.A. (N.S.) 121.

Counsel for appellants now for the first time call our attention to the case of In Re Shilshole Ave. (Bolcom Mills, Inc. et al v. City of Seattle) 94 Wash. 583, 162 P. 1010. That case seems to hold that the question of benefits is a judicial one under the statutes considered by the court. The line of argument was entirely different from that taken by the same court in Northern Pac. Ry Co. v. Seattle, supra. The court relied to a great extent upon the same case on a former appeal, involving condemnation proceedings, as shown in 85 Wash. 522, 148 P. 781, 787, which cites section 7790 Rem. & Bal. Code (1915) to the effect "That no property shall be assessed a greater amount than it will be actually benefited." Just extent of the influence of that statutory provision in the second case we do not know. The case did not involve a railroad right of way. The Northern Pac. Ry. Co. case, supra, was not mentioned. So far as we have been able to find the last mentioned case has never been overruled. And it is far from clear that if the simple question were now presented to that court as to whether or not a railroad right of way is subject to special assessment for street improvements under evidence such as was before this court, it would now hold contrary to the decision in the Northern Pac. Ry Co. case, particularly, in view of the exhaustive consideration of the subject in the latter case.

Counsel for appellant argue that the case ought to be reheard because the "conclusive" effect of the statute was not argued on the question of benefits. Whether the statute has such conclusive effect or not depends entirely on whether or not the appellant was entitled to be heard on the question of benefits—whether in other words the question is judicial—or whether the legislature determined that question. In the latter case, as almost unanimously held by the courts, the legislative determination is conclusive, except in cases of fraud, arbitrariness or palpable injustice. So that the matter of conclusiveness or non-conclusiveness is in fact merely a matter of construction of our statute, round which the whole argument of counsel revolved. We might, however, add that counsel for appellant assigned as one of the errors that the trial court held the statute to be "conclusive." And counsel for respondent argued (page 30 of their brief) as follows: "The statute being a reasonable exercise of the legislative power, the inquiry passed beyond the range of the judiciary. Further action, if necessary or desired, must come from the legislature." That clearly is a statement claiming that the provision of our statute is conclusive on the question of benefits. That is substantially the position we took in the original opinion.

Counsel for respondent relied upon the case of Northern Pac. Ry Co. v. City of Seattle, supra. The case was discussed by counsel on both sides. It holds that a legislative determination as to what lands are benefited is conclusive. And that was the holding in at least several cases cited by the court. Again counsel for respondent cited section 29-2060, mentioned supra. True counsel for respondent were not entirely consistent, or, we may say, insistent upon the position taken as above mentioned, and attempted to meet the situation should this court hold that the matter of benefit is a judicial question. That, of course, is not surprising. We think that

the question decided by this court was squarely before us. If some feature was overlooked by counsel for appellant, or was not deemed important, that could not limit this court in deciding the point. And we might say parenthetically that we have not infrequently found that were we to limit our decisions strictly and literally to the arguments advanced by counsel in a case, the law in this jurisdiction would be in a sorry state. We do not find any sound reason for departing from our former opinion, and the petition for rehearing must be and is denied.

That brings us to the distinct and alternative request in the petition for rehearing, namely that we should delete from our opinion everything relating to the point as to whether or not appellant's right of way may be assessed for street improvements. We held in the original opinion, as a second question involved herein, that the property of the appellant was not sufficiently described, and for that reason set aside the assessment. So counsel for appellant now argue that the question of whether or not the right of way of appellant is assessable for the street improvements involved herein is a moot question, and should not be decided by this court at this time. It is true that this court will not pass upon moot questions, nor, generally, upon questions not necessary to be decided, and which are not likely to arise again in the further proceedings in the case. The point whether or not the right of way of appellant is assessable for the improvements in question was decided by the trial court. The major portion of the briefs and of the oral arguments was devoted to that point. If we should not now decide it, it is bound to arise again, and would, it would seem, require another appeal. In such a case it is our right, if it is not our duty, to decide the question. Babcock v. Rieger, 332 Mo. 528, 58 S.W. (2d) 722; Stocker v. Boston & M.

R. R., 83 N. H. 401, 143 Atl. 68; Wight v. Rohlffs, 48 C.A. (2d) 696, 121 P. (2d) 76; Christensen v. Hennepin Transp. Co. 215 Minn. 394, 10 N.W. (2d) 406, 147 A.L.R. 945, and cases cited, and see Welsh Mfg. Co. v. Fitzpatrick, 61 R. I. 469, 5 C.J.S. 48, note 37; Decennial Digest, section 843 under "Appeal and Error." A decision on a point under these circumstances cannot be regarded as obiter dictum. In Watson v. St. Louis L. M. & S. Ry Co., 169 Fed. 942, 944, the court stated: "A carefully prepared opinion on an important question of law expressly decided by the trial court * * * properly brought before the court by the assignment of errors and the pleadings in the case, and which was fully and ably argued by counsel for all the parties, cannot be considered as obiter even if the question could be, and in fact was, determined upon other issues."

From time immemorial up to the present time, complaints have been heard of the laws' delays. Justinian in 530 A.D. found it necessary to enact a law to speed up the disposition of pending cases "lest lawsuits extend almost into infinite time and exceed the measure of the life of man." Code Justinian 3, 1, 13. Whether Justinian succeeded in his aim or not we do not know. Several states appear to have enacted statutes in the spirit of Justinian's law, requiring appellate courts, in case of reversal, to decide all questions arising in a case. That, of course, is for the purpose of obviating further appeals, if possible. See notes to C.J.S. under "Appeal and Error" section 1455. Counsels' contention, if upheld, would, we think, mean an adding to the justifiable complaint against the laws' delay. The policy attempted to be followed by this court for many years forbids that. The alternative request above mentioned is denied.

RINER, J., and ILSLEY, J. concur.